*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETOSKEY, Minors.

UNPUBLISHED
November 19, 2020

No. 347460
Ingham Circuit Court
Family Division
LC No. 17-001112-NA
　　　　 17-001113-NA

Before: MARKEY, P.J., and METER and GADOLA, JJ.

PER CURIAM.

Respondent-mother, the mother of the minor children MIP and MEP, and respondent-father, the biological father of MEP, appeal by delayed leave granted[1] the trial court's order terminating their respective parental rights to these children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).[2] We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondents, who are proceeding *in propria persona*, raise several issues on appeal. We begin by addressing their argument that the trial court erred in finding that petitioner presented clear and convincing evidence to establish the statutory grounds for termination. We review for clear error a trial court's finding that a statutory ground for termination has been proved by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id.* When applying this standard, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

---

[1] *In re Petoskey*, unpublished order of the Court of Appeals, entered March 4, 2020 (Docket No. 347460).

[2] MIP's father was unidentified.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court found that grounds for terminating respondents' parental rights were established under MCL 712A.19b(3)(c)(*i*), (g), and (j), which allow for termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

With respect to MCL 712A.19b(3)(c)(*i*), the trial court found that neither respondent had rectified the conditions that led to the adjudication. The evidence supports this finding. Evidence was presented that respondents failed to participate in the children's medical and educational services, despite having an opportunity to do so. The children's treatment providers testified about the children's medical conditions, their autism, their serious developmental delays, and the extensive medical, educational, and emotional support services they required in order to progress. Respondents did little to nothing to address these issues before the children entered care, and apart from completing a general parenting class, neither respondent meaningfully participated in other services to allow them to address the children's special needs. Respondent-mother acknowledged that she had not participated in the children's medical appointments while they were in foster care. Similarly, respondent-father acknowledged that he did not have contact with MIP's foster parents and did not attend the children's medical appointments or autism screenings except for vaccinations. Although respondents maintained that they were not timely notified of the children's appointments, this was contradicted by the children's caseworker. Moreover, there was no evidence that respondents seriously attempted to otherwise become involved and engaged in the children's treatments. Although MEP's autism therapy occurred in her foster home, which limited respondents' ability to participate in that therapy, respondents never made enough progress to have the children for overnight or other extended visits. MEP's therapist explained that she was not assisting respondents because they were not having home visits, but would be able to assist them if MEP was returned to their care. Respondents never progressed to that point.

The trial court's findings are also supported by the therapist's opinion that MEP's success in treatment depended on consistency, above-average patience, and a strong commitment and desire that MEP "rise." The therapist explained the importance for parents to be prepared even if their child is in foster care because that was an important part of nurturing. Respondents did not demonstrate a strong commitment to resolving the issues that caused the children to come into care, much less demonstrate that they were strongly committed to ensuring that the children would have enough support in the future.

Although respondents had made progress with their housing, the court's finding that housing remained a barrier is supported by the testimony. Respondent-father was working, and respondents had obtained housing, but the stability of their housing remained questionable because of recent eviction proceedings.

Although respondents had begun consistently attending parenting time, the caseworker and MEP's therapist both testified about respondents' failure to bring supplies for the children. The caseworker further testified that on occasion respondents were able to manage the children's meltdown behaviors, but they still were unable to recognize some of MEP's other destructive behaviors. The caseworker had not seen any new behaviors during parenting times that reflected progress or benefit from parenting classes.

Respondents' substance abuse was not a reason for the court's initial exercise of jurisdiction. However, the initial service plan contained prohibitions against possessing alcohol or legal or illegal substances, and it required respondents to report any prescriptions and participate in drug screenings. Although respondents' substance abuse is more relevant to the trial court's analysis of MCL 712A.19b(3)(g) and (j), the court's finding that substance abuse remained a barrier to reunification is not clearly erroneous. Respondent-mother left a rehabilitation program early and against the advice of the treatment providers, and she thereafter continued to test positive for cocaine and Xanax. Although respondent-father had made some progress, he continued to test positive for cocaine in June and August 2018, and he continued to use marijuana without a valid medical marijuana card. Respondent-father asserts that he received a medical marijuana card on November 21, 2018, but this was after proofs were closed on November 15, 2018. Although respondent-father attended some therapy sessions, he acknowledged that he missed a number of group sessions in October 2018, and he could not recall whether he missed any in August or September. Thus, to the extent that respondents' substance use was a factor in why the children were placed in care, the trial court did not clearly err by finding that this remained a barrier to reunification.

The trial court also did not clearly err when it found that these conditions would not be rectified within a reasonable time. Respondents had made minimal progress during the 16-month period the children had been in foster care. Although substance abuse, standing alone, may not be sufficient to support terminating parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), see *In re LaFrance Minors*, 306 Mich App 713, 731; 858 NW2d 143 (2014), the testimony in this case demonstrated the children's needs for essentially constant care and that neither respondent was prepared to meet those needs. Given this testimony, the trial court's finding that respondent-mother's continued drug use would affect her ability to meet the children's needs and protect the children from each other is not clearly erroneous. In addition, the psychological evaluations recommended that both respondents demonstrate six months of sobriety before considering them

for unsupervised parenting time. At the time of the hearing, neither respondent had achieved that goal.

Accordingly, the trial court did not clearly err by finding that respondents had not rectified the conditions that led to the children's adjudication, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.

With respect to MCL 712A.19b(3)(g), the trial court found that both respondents were unable to provide proper care and custody, irrespective of their financial circumstances. The court noted that the ability to provide proper care and custody goes beyond just the capacity to provide for a child's physical needs such as housing, food, and clothing. The trial court again relied on the evidence of respondents' inability or unwillingness to attend the children's medical and educational appointments, which would have enabled them to better understand and appropriately address the children's needs. The court also noted that while respondents had complained about being given late notice of some of the appointments, there was no indication that they were proactive in asking about them.

The trial court's findings are supported by the evidence concerning the children's medical needs and respondents' failure to participate in services offered to the children. In addition, the court's finding that respondents were not proactive about attempting to learn how they could care for or help address the children's autism is supported by the evidence of their lack of concern about how their missed parenting time visits upset MIP. Respondents complain about being required to show up early for parenting time, but this requirement was imposed because of their repeated failure to show up for scheduled parenting time sessions without notice, which negatively affected the children. Respondents' continued substance abuse also demonstrates their continued inability to provide proper care and custody, especially considering the children's special needs, which required constant care. Considering the children's special needs, the amount of time the children had been in care, and respondents' lack of progress, the trial court also did not clearly err by finding that respondents would not be able to provide proper care and custody within a reasonable time.

With respect to MCL 712A.19b(3)(j), this Court has held that "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). In addition, emotional harm to a child is sufficient to support termination under § 19b(3)(j). *In re Hudson*, 294 Mich App at 268. The trial court's reliance on § 19b(3)(j) is supported by the evidence of respondents' minimal progress in complying with their service plan. The caseworker's observations of parenting time also support the court's finding that respondents lacked the capacity to manage the children's special needs or to address their negative behaviors, particularly the children's aggression toward each other. When coupled with respondents' unwillingness to become involved in medical and educational appointments, the trial court did not clearly err by finding that the children were reasonably likely be harmed if returned to respondents' home.

## II. BEST INTERESTS

Respondents also argue that the trial court erred by finding that termination of their parental rights was in the children's best interests. We disagree. We review for clear error the trial court's

finding that termination of parental rights is in a child's best interests. *In re Payne/Pumphrey/ Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Factors to be considered include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted). A court may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The trial court found that the children's bond with respondents was slight, with MEP a little more bonded to respondent-father. The court also found that the children did not have a sibling bond. The court again noted that respondents had made little progress in improving their parenting abilities, and believed that respondents still had not acknowledged their previous neglect of the children's medical and developmental needs, which had been harmful to the children. The court also observed that testimony had been presented regarding the children's strong needs for permanency, finality, and stability, and noted that the children had been out of respondents' home since July 2017. The court noted that although respondents had asked for another reporting period, this had actually occurred over the course of the termination hearing, and respondents still had not demonstrated that they were anywhere close to being able to provide the necessary stability. The court observed that the children were advancing in their development in their foster placements, where their needs were being met, which favored termination, and it noted that the children were not in relative placements, which also weighed in favor of termination.

The trial court did not clearly err by finding that termination of respondents' parental rights was in the children's best interests. As discussed earlier, the court did not clearly err when it found that respondents had made minimal progress in addressing the barriers to reunification during the 16 months the children were in foster care. More significantly, trauma assessments performed after the children's removal in August 2017, revealed that both children had suffered from trauma and had significant developmental delays. MEP's therapist testified about the strides the child had made while in foster care. MEP was well adjusted to her foster home, knew the routine, and seemed very satisfied in her day-to-day activities. MEP's therapist thought the foster home was a stable environment where MEP's routine was consistent. MEP considered the foster placement to be her home and her therapist testified that this stability was important for MEP's continued success.

MIP's therapist testified that MIP's behaviors had also improved in foster care. He was talking more, was less aggressive, his tolerance for his peers had grown, and he was recovering from his earlier developmental delays. MIP seemed bonded with his foster parents, his environment with them was stable and consistent, and it was a good environment for MIP to be in. MIP's foster-mother also had experience working with autistic individuals. Although respondent-father asserts that the trial court unfairly held his continued marijuana use against him, it is evident

that the trial court was more focused on the children's special needs and respondents' inability to meet those needs within a reasonable time.

In sum, a preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights was in the children's best interests.

## III. REASONABLE EFFORTS

Respondents also argue that petitioner did not make reasonable efforts to reunify them with their children, including by failing to consider placement of the children with relatives. We disagree.

Although petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must respondent[s] cooperate and participate in the services, [they] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). We review for clear error a trial court's decision regarding reasonable efforts. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

The trial court's findings that petitioner made reasonable efforts to reunify respondents with their children is not clearly erroneous. The caseworker testified regarding the many services that were offered to respondents, which included psychological evaluations, substance abuse assessments, substance abuse treatment, drug testing, individual and couples therapy, and parenting classes. Indeed, respondent-father testified that he was offered and allegedly participated in a number of services, including the psychological examination, substance abuse testing, parenting classes, parenting time, and substance abuse and group therapy. Although respondent-father denied that he was provided with the results of his psychological evaluation and denied being referred for therapy, he acknowledged that he had signed paperwork stating that a referral had been made for individual therapy the day before he completed his psychological evaluation.

The trial court also did not clearly err when it found that respondents failed to participate in or benefit from the services offered. Respondents' psychological evaluations were delayed until April 2018, because of respondents' failure to cooperate with earlier appointments. Similarly, the caseworker explained that substance abuse assessments were delayed because respondents initially refused to admit to any drug use. Although respondent-mother eventually entered a detoxification and rehabilitation program, she left after two weeks without completing the program, against the recommendations of the treatment providers. Afterward, she continued to test positive for THC, cocaine, and Xanax. Although respondent-father claimed that MEP's service providers never involved him with her services, the caseworker testified that respondents were provided with information about an education plan meeting and respondent-father said they would attend, but then they did not appear. At the time of the permanency planning hearing, respondents also had not recently met with the autism therapist. When asked by respondent-father's counsel whether there were additional specialized skills or training that respondent-father could obtain in dealing with the children's autism, the caseworker stated that respondents would have to become involved in MIP's individual education program and then other conversations would occur with service providers as to what they could provide. However, she also testified that respondent-father would

need to be working toward sobriety. With respect to respondents' claim that they were unfairly treated during parenting time and forced to arrive 30 minutes to an hour early for visits, the record discloses that this requirement was imposed because of respondents' history of no-shows.

In sum, the record does not support respondents' argument that petitioner failed to make reasonable efforts to reunify respondents with their children. Rather, reasonable reunification services were offered, but respondents failed to participate in or benefit from those services.

We also reject respondents' claim that petitioner and the trial court failed to explore the possibility of relative placement. Respondents offered respondent-father's mother and respondent-father's grandmother as placement options. Petitioner investigated those placements and determined that respondent-father's mother was not a viable placement option because she was on the Central Registry because of her criminal history. Respondent-father's grandmother was found to be an unsuitable placement option because of concerns about her health and her age, particularly given the special needs of the children, who required around-the-clock care. This claim of error is without merit.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, respondents both argue that they did not receive the effective assistance of counsel. "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings . . . ." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Because this issue was not raised in an appropriate motion in the trial court, our review of this issue is limited to errors apparent from the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014); *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Parents have a right to counsel in parental rights termination cases. *In re Williams*, 286 Mich App 253, 275-276; 779 NW2d 286 (2009). "The right to counsel includes the right to competent counsel." *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988). To establish ineffective assistance of counsel, respondents must show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Respondents must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Because respondents bear the burden of demonstrating both deficient performance and prejudice, they necessarily bear the burden of establishing the factual predicate for their claims. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Respondents cite no authority and provide very little argument in support of their ineffective-assistance claims. Respondents assert that respondent-mother's attorney was "overworked," which they claim compromised his representation "due to him forgetting key facts and mixing up cases." Respondents do not provide any record citations in support of this claim and they do not otherwise explain what facts counsel allegedly forgot or how counsel "mixed up

cases" or seemed confused. Because respondents have failed to provide any underlying factual support for their claim that respondent-mother's attorney performed deficiently, this claim cannot succeed. *Carbin*, 463 Mich at 600.

Respondent-father does not assert that the attorney who represented him at the termination hearing performed deficiently. Rather, the basis for his claim is that he was represented by three other attorneys in earlier proceedings. He asserts that the outcome would have been different if his final attorney had represented him during the entire case. Respondent-father's first attorney ceased representing respondent-father because that attorney was also representing respondent-mother and the trial court determined that separate counsel was necessary to avoid a conflict of interest. Respondent-father's second attorney died during the proceedings. His third attorney represented respondent-father only briefly before being allowed to withdraw due to an out-of-state conflict on the date of the scheduled termination hearing.

Although respondent-father's last attorney was appointed a couple of weeks before the termination hearing began, the trial court adopted procedures to ensure that counsel had adequate time to subpoena any witnesses for respondent-father and to ensure that counsel was prepared to confront petitioner's witnesses. Counsel identified only one witness listed by petitioner whom he needed more time to investigate. The trial court instructed petitioner not to call that witness on the first day of the hearing. The witness did not testify until the second day of the hearing, which was held more than a month later, and there was no contention that counsel was unprepared to address the witness's testimony at that time. The court also stated that the hearing would be continued on future dates to allow counsel time to subpoena any witnesses he wanted to call on behalf of respondent-father. As noted by petitioner, counsel did not call any witnesses until two months after the first day of the hearing. Later, when counsel requested an adjournment to enable respondent-father to call another witness, the court granted counsel's request. Ultimately, however, respondent-father decided not to call the witness.

In sum, the record does not support respondent-father's suggestion that counsel's late appointment prevented counsel from effectively representing respondent-father at the termination hearing. Respondent-father does not identify any witnesses who counsel failed to call or any evidence that counsel failed to present, and he does not otherwise explain how counsel was unprepared to address petitioner's witnesses and evidence, or performed deficiently. Moreover, any argument that the outcome would have been different if respondent-father's last attorney had been appointed earlier is pure speculation, especially considering that respondent-father fails to explain how his prior attorneys performed deficiently. For these reasons, we reject respondent-father's claim that he was denied the effective assistance of counsel.

V. JURISDICTION

Respondents also challenge the trial court's decision to exercise jurisdiction over the children following a bench trial. We review the trial court's decision to take jurisdiction in child protective proceedings "for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). To properly exercise jurisdiction, the trial court must find that a preponderance of the evidence supports a statutory basis for jurisdiction. *Id.*; MCR 5.972(C)(1).

MCL 712A.2(b) provides, in pertinent part:

> Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

One of the reasons the children were removed from respondents' care was because respondents were homeless and the children were staying with an aunt, who struck MEP in the face causing an injury. The aunt notified respondents of this and they were able to see the bruising on MEP's face, but returned the children to the aunt's care. The aunt's testimony was corroborated by the person with whom respondents were living at the time and by a text message that the aunt had sent to respondent-mother. Respondents appear to argue that this testimony was insufficient to support the court's exercise of jurisdiction because these witnesses were not credible. Respondents claim that the aunt and her husband were motivated to testify falsely to lessen their criminal culpability, and the person with whom they were living was biased against them because he had stolen respondents' belongings in an attempt to blackmail them. The trial court, however, found that these witnesses provided credible testimony. This Court ordinarily defers to a trial court's findings regarding credibility. *In re Miller*, 433 Mich at 337; MCR 2.613(C).

Moreover, respondents do not cite anything in the record to suggest that the person with whom they were staying had stolen anything from them, had blackmailed them, or was in any way hostile to them. With respect to the aunt, the trial court noted that she had nothing to gain by admitting that she had slapped MEP so hard that it left a significant bruise and that the aunt would not have simply left the children at her home when going to respondents' home. The aunt's testimony was also corroborated by the testimony of the Child Protective Services worker who reviewed the text message that the aunt sent to respondent-mother shortly after the aunt struck MEP. Thus, respondents have failed to demonstrate any clear error in the trial court's decision to find these witnesses credible with respect to whether respondents allowed the children to return to the aunt's home after learning that the aunt had struck MEP and they had seen the injuries to the child.

In addition, respondents do not discuss the additional bases for the trial court's finding that a statutory ground for jurisdiction was established. The court also found that petitioner had shown by a preponderance of the evidence that respondents had neglected the children's medical needs associated with their developmental delays. This finding, coupled with respondents' admission that they were essentially homeless, was also sufficient to permit the court to take jurisdiction over the children even without the evidence that respondents had allowed the children to return to the aunt's home. Accordingly, there is no merit to respondents' challenge to the trial court's exercise of jurisdiction over the children.

## VI. RIGHT TO APPEAL

Respondents also argue that they were denied due process because the trial court failed to advise them of their right to appeal the jurisdictional decision. Although there is no indication in the record that the trial court advised respondents of a right to appeal the court's jurisdictional decision, the remedy for such an error is to allow a respondent to challenge the court's jurisdictional decision in an appeal of a later order terminating parental rights. Cf. MCR 3.972(G). Respondents have challenged the trial court's jurisdictional decision in this appeal and we have addressed and decided that issue. Because respondents have been afforded the opportunity to challenge the court's jurisdictional decision, this claim of error is moot. *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018); *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014). Therefore, it is not necessary to further consider this issue.

Affirmed.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Michael F. Gadola