# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN GLEASON,

        Plaintiff,

and

KAREN WEAVER,

        Intervening Plaintiff,

and

DON PFEIFFER,

        Intervening Plaintiff-Appellant,

v

WILLIAM SCOTT KINCAID,

        Defendant-Appellee.

FOR PUBLICATION
March 8, 2018
9:05 a.m.

No. 340239
Genesee Circuit Court
LC No. 17-109612-CZ

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Intervening plaintiff-appellant, Don Pfeiffer, appeals as of right the trial court's order accepting the withdrawal of candidacy of defendant, William Scott Kincaid, from the election for 9th Ward City Councilperson for the City of Flint. Pfeiffer challenges the trial court's August 29, 2017 opinion and order permitting defendant to withdraw from the city council race and instead participate as a candidate in the November 7, 2017 recall election for the office of Mayor of the City of Flint. We conclude that this matter is moot, but also conclude that this issue is one of public significance that is likely to recur and to evade appellate review. Reaching the merits of this appeal, we reverse.

## I. FACTS

This case arose from defendant's attempt to simultaneously run for election to both 9th Ward City Councilperson for the City of Flint and the office of Mayor of the City of Flint. The

underlying facts are not disputed. Plaintiff John Gleason is the Genesee County Clerk. Intervening plaintiff Karen Weaver is the mayor of the City of Flint, who in late 2017 was facing a recall election. Pfeiffer, too, had declared his candidacy for mayor in the then-upcoming November 7, 2017 election.

Defendant was at that time a councilperson on the Flint City Council. In April 2017, defendant filed his intent to run for reelection to his city council seat. After filing his intent to run, defendant had until April 28, 2017, to withdraw as a candidate for city council if he did not wish to run. Defendant did not, at that time, withdraw from the city council race. Defendant thereafter won the primary election for the city council seat on August 8, 2017. Meanwhile, on August 3, 2017, plaintiff certified a recall election for Mayor of the City of Flint. On August 11, 2017, defendant paid the filing fee and declared himself a candidate for mayor in the recall election. Both the city councilperson seat and the mayor's seat were to appear on the November 7, 2017 ballot.

On August 15, 2017, plaintiff, represented by the Genessee County Prosecutor, sought a declaratory judgment from the trial court regarding whether defendant could run for both city council and mayor in the same election. The complaint noted that under MCL 168.558(5), a person who is listed as a candidate for two incompatible offices "shall select the 1 office to which his or her candidacy is restricted within 3 days after the last day for the filing of petitions or filing fees" and that "[f]ailure to make the selection disqualifies a candidate with respect to each office for which petitions or fees were so filed and the name of the candidate shall not be printed upon the ballot for those offices." Plaintiff sought guidance from the trial court regarding whether defendant was required to withdraw from one race or was disqualified with respect to both the mayoral and city council elections. Both Weaver and Pfeiffer intervened in the declaratory judgment action before the trial court, arguing that the offices of mayor and city councilman were incompatible, and that because defendant had not timely withdrawn his candidacy as to either office, he was now disqualified as a candidate for both offices under MCL 168.558.

After a hearing, the trial court entered an opinion and order holding that defendant was allowed to run for either mayor or city council, but not both. The trial court observed that MCL 168.558(5) "penalizes any candidate who attempts to run for two incompatible offices by excluding the candidate from the elections of both offices," and it ruled that "the offices of mayor and city council are incompatible within the definition of MCL 15.181(b) because the two offices must necessarily function separately from one another." However, the trial court noted that "no statute addresses the unique timing problem in the present case," because "[t]he mayoral contest did not become available and did not exist until after [defendant] was irrevocably committed to the council race as a result of MCL 168.332a." Thus, at the time the recall election was certified, "the language of MCL 168.332a and MCL 168.558(5) irreversibly barred [defendant], an otherwise eligible candidate, from running for mayor because [defendant] had no mechanism under the law to permissibly withdraw from the city council race and enter the mayoral race." The trial court determined that because "of this timing oddity, [defendant] was denied his constitutional right to choose the public office for which he wished to run." It concluded that it had to "fashion an equitable remedy, pursuant to the Court's equitable jurisdiction under the Michigan Constitution" because defendant could not "be denied his

-2-

constitutional right to run for public office[.]" Concluding that defendant could run for either office but not both, the trial court required defendant to withdraw from one of the races.

Defendant thereafter submitted to the trial court the withdrawal of his city council candidacy, and the trial court issued an order accepting defendant's withdrawal from the city council race. The general election was held on November 7, 2017, in which defendant appeared as a candidate for mayor. Weaver prevailed in the mayoral recall with approximately 53% of the vote, defendant received approximately 32% of the vote, and Pfeiffer received approximately 6% of the vote.[1] Pfeiffer now appeals to this Court.[2]

## II.  DISCUSSION

### A.  MOOTNESS

Whether a case is moot is a threshold question that we address before reaching the substantive issues of a case. *In re MCI Telecom Complaint*, 460 Mich 396, 435 n 13; 596 NW2d 164 (1999). An issue is moot when a subsequent event makes it impossible for this Court to grant relief. *In re Detmer*, 321 Mich App 49, 56; ___ NW2d ___ (2017). It is our duty to decide actual cases and controversies, that is, actual controversies arising between adverse litigants. *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010). A case that does not rest upon existing facts or rights and presents nothing but abstract questions of law is moot. Because reviewing a moot question ordinarily would be a "purposeless proceeding," we generally dismiss a moot case without reaching the underlying merits. *Id.* at 35 (citation omitted). It is well-recognized, however, that an exception exists when an issue is moot, but is "one of public significance that is likely to recur, yet may evade judicial review." *In re Midland Publishing*, 420 Mich 148, 152 n 2; 362 NW2d 580 (1984). An otherwise moot issue may thus appropriately be addressed by a court when there is a reasonable expectation that the publicly significant alleged wrong will recur yet escape judicial review, in which case the issue, though moot, is nonetheless justiciable. *Detmer*, 321 Mich App at 56.

The issue in this case is whether defendant, a candidate for two incompatible public offices, having failed to remove his name from candidacy from either of the offices within the time established by statute, could nonetheless continue his candidacy for the office of his choosing despite an apparent statutory proscription to the contrary. That issue, for purposes of

---

[1] We take judicial notice of the fact that defendant appeared as a candidate in the mayoral recall election, as did Weaver and Pfeiffer, and that Weaver won the recall election. See *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015), citing MRE 201 (this Court may take judicial notice of a public record). Record available at https://www.gc4me.com/departments/county_clerks1/docs/Elections/201711/Cumulative%20 Report-11-9-2017%2017-53-35%20PM.pdf.

[2] This Court denied Pfeiffer's application for leave to appeal in which he sought immediate appellate review of the trial court's ruling. *John Gleason v William Scott Kincaid*, unpublished order of the Court of Appeals, entered September 21, 2017 (Docket No. 340202).

these litigants and this election, is now moot. The election of November 7, 2017, has occurred and no remedy this Court could fashion in this case would affect that event. To the extent that this Court could direct that votes cast for defendant be excluded from the election results, it would not have any practical effect because Weaver would still prevail in the election. We must then ask whether the issue nonetheless (1) is of public significance, (2) is likely to recur, and (3) may evade judicial review, such that it should be resolved by this Court despite its being moot. See *Id*. at 57.

We conclude that this issue is of public significance. The interpretation and application of Michigan's election laws extend beyond these candidates and beyond the now-past Flint general election, affecting future candidates and the public. We also conclude that disputes involving this issue are likely to recur. Elections occur regularly and, to the dismay of elected officials, recall elections are an ever-present part of our political landscape. When a recall election occurs, there is no assurance that the timing of the recall election will not conflict with the other election activities of potential candidates. In fact, because the likely candidate in any recall election is some other elected official who is interested in seeking the challenged position, it is inevitable that recall elections will sometimes conflict with the timing of the election activities of potential candidates pursuing other offices. Moreover, the success of defendant[3] in this case, left unaddressed, may actually encourage others to follow his example and run for two incompatible offices, then withdraw from whichever race is most advantageous to the candidate before the election.

Finally, we note that this issue is likely to evade judicial review. Although the parties to this appeal timely sought a declaratory judgment by the trial court and review by this Court, the strict time constraints of the election process necessitate that, in all likelihood, such challenges often will not be completed before a given election occurs, rendering the discussion, as in this case, moot before appellate review. Accordingly, we conclude that although this matter is moot, this case involves an issue of public significance that is likely to recur and likely to evade appellate review. We therefore will reach the merits of this appeal.

## B. THE TRIAL COURT'S EXERCISE OF EQUITY

In this case, Pfeiffer[4] contends that the trial court erred by exercising its equitable jurisdiction to create a remedy when a contrary remedy was dictated by statute. We agree.

---

[3] Though defendant was not successful in his bid for election in Flint's mayoral race, he was successful in placing his name on the ballot for that race despite statutory authority to the contrary.

[4] We reject defendant's contention that Pfeiffer lacks standing to appeal. MCR 7.203(A) requires that a party seeking appellate relief be an "aggrieved party," which is similar to the requirement that a plaintiff have "standing" to initiate a claim before a trial court, but differs from standing in that the injury to the litigant on appeal must arise from either the actions of the trial court or the appellate court. *Federated Ins Co v Oakland Co Rd Comm,* 475 Mich 286; 292; 715 NW2d 846 (2006). "A candidate for elective office suffers a cognizable injury in fact if, due

## 1. STANDARD OF REVIEW

When reviewing a grant of equitable relief, we will set aside the trial court's findings of fact only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that we review de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). In addition, we review de novo questions of statutory interpretation. See *Demski v Petlick*, 309 Mich App 404, 426; 873 NW2d 596 (2015).

## 2. STATUTORY INTERPRETATION

Courts are bound to follow statutes, and must apply them as written. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Stanton v Battle Creek*, 466 Mich 611, 615; 647 NW2d 508 (2002). If the language of a statute is unambiguous, the intent of the Legislature is clear, and the statute must be enforced as written. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017).

Equity does not apply when a statute controls. *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 55-56; 503 NW2d 639 (1993). "Although courts undoubtedly possess equitable power, such power has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake. A court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking . . . ." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005). Thus, where a statute "is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere." *Senters*, 443 Mich at 56 (quotation marks and citation omitted). In other words, when an adequate remedy is provided by statute, equitable relief is precluded. See *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

Our Supreme Court has explained that "if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest." *Devillers*, 473 Mich at 585, quoting *Robinson v Detroit*, 462 Mich 439, 467; 613 NW2d 307 (2000). Moreover, "if a court is free to cast aside, under the guise of equity, a plain statute . . . simply because the court views the statute as 'unfair' then our system of government ceases to function as a representative democracy." *Devillers*, 473 Mich at 591. "Statutes lose their meaning if an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 407; 738 NW2d 664 (2007) (quotation marks and citation omitted).

---

to the improper interpretation and enforcement of election law, he or she is prevented from being placed on the ballot or must compete against someone improperly placed on the ballot." *Martin v Secretary of State*, 482 Mich 956; 755 NW2d 153 (2008). At the time that Pfeiffer appealed to this Court, he was a rival candidate in the then-upcoming mayoral election who was facing the prospect of competing in the election against defendant, whom the trial court had concluded was to be placed on the ballot. Pfeiffer therefore is an "aggrieved party" under MCR 7.203(A).

3. INCOMPATIBLE OFFICES

Section 2 of Michigan's incompatible public offices act, MCL 15.182, generally prohibits holding incompatible public offices. *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 154; 627 NW2d 247 (2001). MCL 15.182 provides that, "a public officer or public employee shall not hold 2 or more incompatible offices at the same time," except as provided by MCL 15.183. MCL 15.181 defines incompatible offices as follows:

(b) "Incompatible offices" means public offices held by a public official which, when the official is performing the duties of any of the public offices held by the official, results in any of the following with respect to those offices held:

(i) The subordination of 1 public office to another.

(ii) The supervision of 1 public office by another.

(iii) A breach of duty of public office.

On appeal, the parties in this case do not dispute that the two offices in question, Flint city council member and Flint Mayor, are incompatible, and we agree that they are, in fact, incompatible. We therefore conclude, as did the trial court, that MCL 15.182 precluded defendant from simultaneously holding both offices for which he was seeking election.

When a candidate simultaneously seeks two or more incompatible offices, a remedy is provided by MCL 168.558(5).[5] That statutory section provides that a candidate simultaneously seeking two or more incompatible offices is required to withdraw from one of the races within the applicable time period, and failure to do so disqualifies the candidate with respect to both offices. Specifically, MCL 168.558(5) provides:

If petitions or filing fees are filed by or in behalf of a candidate for more than 1 office, either federal, state, county, city, village, township, metropolitan district, or school district, the terms of which run concurrently or overlap, the candidate so filing, or in behalf of whom petitions or fees were so filed, shall select the 1 office to which his or her candidacy is restricted within 3 days after the last day for the filing of petitions or filing fees unless the petitions or filing fees are filed for 2 offices that are combined or for offices that are not incompatible. Failure to make the selection disqualifies a candidate with respect to each office for which petitions or fees were so filed and the name of the candidate shall not be printed

---

[5] Recall elections in Michigan are governed by chapter 36 of the Michigan Election Law, MCL 168.951 *et seq*. *Dimas v Macomb Co Election Comm*, 248 Mich App 624, 627; 639 NW2d 850 (2002). Section 976, MCL 168.976, which is part of chapter 36 governing recall elections, provides that "[t]he laws relating to nominations and elections shall govern all nominations and elections under this act insofar as is not in conflict herewith." MCL 168.558, applicable to elections generally, is therefore applicable to recall elections.

upon the ballot for those offices. A vote cast for that candidate at the ensuing primary or general election shall not be counted and is void.

In addition, the relevant portion of MCL 168.322a states:

After the filing of a nominating petition or filing fees by or in behalf of a proposed candidate for a city office, the candidate shall not be permitted to withdraw unless a written notice of withdrawal is served on the city clerk not later than 4 o'clock, eastern standard time, in the afternoon of the third day after the last day for filing the petition or filing fee ….

In this case, defendant filed his intent to run for reelection to his city council seat, and did not withdraw from that race in the time allocated for withdrawing. Meanwhile, after learning that plaintiff had certified the mayoral recall election, defendant paid the filing fee and declared himself a candidate for mayor in the recall election. Defendant did not withdraw from the mayoral race in the time allocated for withdrawing.

The trial court observed that MCL 168.558(5) "penalizes any candidate who attempts to run for two incompatible offices by excluding the candidate from the elections of both offices." We agree. The trial court further observed that "[t]he mayoral contest did not become available and did not exist until after [defendant] was irrevocably committed to the council race as a result of MCL 168.332a." Again, we agree. The trial court next correctly determined that the result dictated by MCL 168.558(5) was that defendant was to be excluded as a candidate for both offices. That is, in fact, the penalty that our Legislature has determined is to be imposed on any candidate who chooses to run for incompatible offices and does not timely withdraw from one of the races.

The trial court in this case, however, then applied its equitable powers to exempt defendant from the outcome mandated by MCL 168.558. The trial court determined that the result dictated by MCL 168.558(5) would be unfair to defendant because of the "timing oddity," wherein defendant was "barred from running for mayor because [defendant] had no mechanism under the law to permissibly withdraw from the city council race and enter the mayoral race." Defendant, however, was only barred from running for mayor because he already had chosen to run for city council. Knowing that he was irrevocably committed to the city council race, and presumably also knowing the statutory prohibition against running for incompatible offices, defendant nonetheless chose also to run for mayor in contravention of the incompatible public offices act.

The trial court in this case fashioned an equitable remedy, despite the clear dictates of the applicable statutes, because the trial court determined that the odd timing of the recall election worked to deprive defendant of his "constitutional right" to run for the office of Mayor of the City of Flint. However, the right to be a candidate for public office is not a constitutional one. See *Castner v Clerk of the City of Grosse Pointe*, 86 Mich App 482, 492; 272 NW2d 693 (1978), and see also *Green v McKeon*, 468 F2d 883, 884 (1972). By contrast, our Legislature "is empowered to enact laws to promote and regulate political campaigns and candidacies." *Michigan Educ Ass'n v Secretary of State*, 489 Mich 194, 202; 801 NW2d 35 (2011). Thus, while there is a constitutional right of free speech and political expression, any right to run for a

particular political office is bounded by applicable statutory provisions, such as the Michigan Election Law and the incompatible public offices act. Neither defendant nor any other potential candidate for public office has a "constitutional right" to run for a particular office in derogation of these laws. The timing of this particular recall election does not change this fact. Defendant had already filed to seek reelection to his position on the Flint City Council and had prevailed in the August primary election for that position. The fact that plaintiff thereafter certified the recall election for the office of Mayor worked, in this instance, to deprive defendant the opportunity to run for that office. This sad but true reality, when viewed from defendant's perspective, did not empower the judiciary to fashion an equitable remedy allowing defendant to choose the office he wished to seek in the face of statutes precluding defendant from such a choice.

As explained by our Supreme Court, a court's equitable power is not "an unrestricted license for the court to engage in wholesale policymaking" and courts are not "free to cast aside, under the guise of equity, a plain statute . . . simply because the court views the statute as 'unfair.' " *Devillers*, 473 Mich at 590-591. Here, as the trial court accurately noted, at the time the recall election was certified the language of MCL 168.332a and MCL 168.558(5) barred defendant from running for mayor because defendant had already irrevocably committed himself as a candidate for city council. Because the statute controls, equitable relief was precluded. The trial court therefore was obligated to apply the statute as written, and exclude defendant from appearing on the ballot as a candidate for either office.

Reversed.


/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola