*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

      Plaintiff-Appellant,

v

WAYNE COUNTY ELECTION COMMISSION,
PATRICIA SUSAN FRESARD, KELLY ANN
RAMSEY, LAKENA TENILLE CRESPO, and
WAYNE COUNTY BOARD OF CANVASSERS,

      Defendants-Appellees,

and

NICHOLAS JOHN HATHAWAY,

      Intervening Defendant-Appellee.

UNPUBLISHED
July 20, 2023

No. 363604
Wayne Circuit Court
LC No. 22-008866-AW

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

      Plaintiff, Robert Davis, appeals as of right an opinion and order denying his motion for declaratory and mandamus relief; granting summary disposition in favor of defendant Patricia Susan Fresard, defendant Kelly Ann Ramsey, defendant LaKena Tenille Crespo, and intervening-

-1-

defendant, Nicholas John Hathaway;[1] denying Davis's motion for injunctive relief; and dismissing Davis's case in its entirety.[2] Finding no error requiring reversal, we affirm.

## I. BACKGROUND

This case concerns the November 2022 general election. Specifically, Davis sought to preclude the inclusion of Fresard, Ramsey, and Crespo's names on the ballot because they filed affidavits of identity (AOIs) that purportedly failed to comply with statutory requirements. He further challenged the form in which Hathaway's name could appear on the ballot. Incumbents Fresard and Ramsey and nonincumbents Crespo and Hathaway ran for judicial office in the Third Judicial Circuit of Michigan (commonly, "Wayne County Circuit Court"). In pursuit of their respective candidacies, each filed an AOI with the Secretary of State. The form affidavit included a line labeled: "Political party, if a partisan office. If running without party affiliation list 'No Party Affiliation.' " Ramsey and Fresard filed their AOIs on March 9, 2022, and March 17, 2022, respectively, and both left the party-affiliation line blank. Crespo filed her AOI on April 19, 2022, writing "N/A" on the party-affiliation line. Hathaway wrote "No Party Affiliation" on his April 18, 2022 AOI.

Relevant to the claims against Hathaway in this case, the AOI form has a space for candidates to mark if their "name formally changed in the last 10 years for a reason other than marriage or divorce" and, if checked, space for the candidates to "print [their] full former name[.]" It also has a series of boxes to be filled out with the "exact name [the candidate] would like printed on the ballot[.]" Hathaway did not fill out the space on his 2022 AOI for formal name changes, and indicated that he wished his name to appear on the ballot in the following form: "Nicholas John Hathaway."

On July 26, 2002, Davis filed suit against the WCEC, Fresard, Ramsey, and Crespo. Davis alleged that the candidates' AOIs were facially defective for failing to include an affirmative statement regarding their lack of party affiliation and sought to disqualify them from the November 2022 general-election ballot. Although the Secretary of State certified these candidates for inclusion on the ballot, Davis alleged that the WCEC had an independent duty to determine whether each candidate was properly certified to appear on the general election ballot, as well as a duty to correct the alleged error committed by the Secretary of State. Davis sought declaratory and mandamus relief effectively precluding Fresard's, Ramsey's, and Crespo's candidacies. Davis's complaint was accompanied by an emergency motion for declaratory judgment, writ of mandamus, and an order to show cause on substantively identical grounds.

---

[1] Hathaway did not move for summary disposition or expressly join in the motions filed by other defendants. Nevertheless, the merits of the claim concerning Hathaway were before the court in the context of Davis's motion for declaratory and mandamus relief.

[2] Defendant Wayne County Election Commission (WCEC) did not move for summary disposition, but the trial court's denial of plaintiff's motion for declaratory and mandamus relief resulted in dismissal of the amended complaint seeking the same relief.

Davis's case was initially assigned to Wayne Circuit Court Chief Judge Timothy M. Kenny. Chief Judge Kenny signed a show-cause order scheduling the matter for hearing on August 4, 2022. On July 29, 2022, Davis filed an emergency motion to disqualify Chief Judge Kenny and the entire Wayne Circuit Court judiciary because of their relationships with the two incumbent defendants, Fresard and Ramsey. Chief Judge Kenny denied Davis's disqualification motion on August 8, 2022. On August 11, 2022, the State Court Administrative Office (SCAO) assigned the motion to Wayne Circuit Court Judge Freddie G. Burton, Jr., for review, but Judge Burton disqualified himself sua sponte based on his role as chairman of the WCEC. Subsequently, the SCAO assigned the motion to Macomb Circuit Court Judge James M. Biernat, Jr., for de novo review. Judge Biernat granted the motion for disqualification as to Chief Judge Kenny only. But he declined to address the issue with respect to the other Wayne Circuit Court judges because Davis withdrew his request for such relief at oral argument.

On September 9, 2022, Wayne Circuit Court Judge Susan L. Hubbard disqualified herself sua sponte. Judge Hubbard declared that a judicial ethics opinion prohibited the assignment of any Wayne Circuit Court judge to Davis's case and thus indicated that the case should be reassigned by the SCAO. On September 12, 2022, Judge Hubbard entered an opinion and order explaining her reasoning in further detail. Thereafter, on September 13, 2022, Wayne Circuit Court Judge Brian R. Sullivan entered an order transferring the case from Chief Judge Kenny to Wayne Circuit Court Judge Qiana D. Lillard, citing Judge Biernat's disqualification order as the reason for the reassignment.[3]

Davis filed an amended complaint on September 22, 2022, adding the Wayne County Board of Canvassers as a defendant, though it does not appear that the newly added defendant was ever served the complaint or otherwise participated in this case. Davis also added allegations that the WCEC met on September 15, 2022, to authorize printing of the general election ballots. Davis claimed that he submitted legal challenges to the WCEC regarding the improper certification of Fresard, Ramsey, Crespo, and a fourth candidate, as well as a challenge to the way Hathaway's name would appear on the ballot. Despite these challenges, the WCEC voted to accept the list of certified candidates, including the five challenged candidates, and to print the ballots for the general election. Because the ballots were printed and ballot dissemination had already begun, Davis added requests for relief seeking a judgment declaring that the WCEC had a legal duty to inform voters that any votes cast for Fresard, Ramsey, or Crespo would not be counted or certified.

---

[3] On September 14, 2022, plaintiff filed with this Court a complaint for writ of superintending control, alleging that Wayne Circuit Court, and Chief Judge Kenny in particular, were failing to enforce Judge Hubbard's September 12, 2022 opinion and order requiring that the case be referred to the SCAO for assignment to a judge outside of the Wayne Circuit Court. This Court dismissed the complaint. *In re Robert T Davis*, unpublished order of the Court of Appeals, entered September 15, 2022 (Docket No. 362987). In doing so, it "presume[d]" that the more recent September 13, 2022 order entered by Judge Sullivan was controlling over Judge Hubbard's earlier orders on the subject. *Id*. Plaintiff's subsequent application for leave to appeal was denied "for failure to persuade the court of the need for immediate appellate review." *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered September 20, 2022 (Docket No. 363010).

Davis also sought a writ of mandamus compelling the WCEC to correct the ballot errors by removing Fresard, Ramsey, and Crespo from the ballot and inform the voters that no votes cast for those candidates would be counted, tallied, or certified. With respect to Hathaway and another nonparty candidate, Davis sought a writ of mandamus compelling the WCEC to correct the ballot errors by immediately reprinting the ballots to accurately reflect the candidates' legal names and not print, circulate, or distribute ballots that did not reflect their legal names. According to Davis, Hathaway had to be identified by his full legal name, Nicholas John Bobak Hathaway, and could not appear on the ballot as "Nicholas John Hathaway."

On September 22, 2022, Davis moved to disqualify Judge Lillard. Judge Lillard denied the motion on October 4, 2022. Pursuant to Davis's request, Judge Lillard immediately referred the disqualification motion to the SCAO for de novo review by another judge of the SCAO's choosing. But Davis withdrew his request on October 6, 2022, stating he believed "that based upon the representations Judge Lillard made on the record during the October 4, 2022 hearing, Judge Lillard can be fair and impartial in adjudicating the merits of this case." Accordingly, Judge Lillard presided over the balance of the proceedings.

Thereafter, five pertinent motions were presented to the court: (1) Hathaway's motion to intervene; (2) Fresard and Ramsey's motion for summary disposition; (3) Crespo's motion for summary disposition; (4) Davis's emergency ex parte motion for a temporary restraining order or preliminary injunction and show-cause order; and (5) Davis's emergency motion for declaratory and mandamus relief. Judge Lillard granted Hathaway's motion to intervene and, in a subsequent opinion, held that (1) the WCEC need not "correct" the way Hathaway's name appeared on the ballot, (2) there was no defect in Crespo's AOI, and (3) Davis's claims relating to Fresard and Ramsey were precluded by laches. Judge Lillard denied Davis's motion for declaratory and mandamus relief, dismissed his motion for injunctive relief, and granted summary disposition in favor of Crespo, Fresard, Ramsey, and Hathaway. This appeal followed.

## II. MOOTNESS

Needless to say, the November 8, 2022 election has already taken place. Even so, Davis preemptively argues that this Court should not decline review on mootness grounds.[4] We agree.

"[T]he question of mootness is a threshold issue that a court must address before it reaches the substantive issues of a case." *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019) (cleaned up). An issue is moot if it involves an abstract question of law without foundation in existing facts or rights or is presented under circumstances "in which a judgment cannot have any practical legal effect upon a then existing controversy." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (cleaned up). Although this Court will not

---

[4] Fresard and Ramsey moved for dismissal of this appeal, arguing that it was rendered moot by the occurrence of the November 2022 general election because plaintiff exclusively sought preelection remedies below that could no longer be granted. Another panel of this Court denied the motion without explanation. *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered March 14, 2023 (Docket No. 363604).

generally address such issues, *Can IV Packard Square*, 328 Mich App at 661, "a moot issue will be reviewed if it is publicly significant, likely to recur, and yet likely to evade judicial review," *In re Indiana Mich Power Co*, 297 Mich App 332, 340; 824 NW2d 246 (2012). This exception is commonly applied in cases involving election-related issues because "the strict time constraints of the election process necessitate that, in all likelihood, such challenges often will not be completed before a given election occurs, rendering the discussion . . . moot before appellate review." *Gleason v Kincaid*, 323 Mich App 308, 316; 917 NW2d 685 (2018). See also *Christenson v Secretary of State*, 336 Mich App 411, 418; 970 NW2d 417 (2021) (regarding address on nominating petition); *Nykoriak v Napoleon*, 334 Mich App 370, 384 n 4; 964 NW2d 895 (2020) (regarding defective AOI); *Barrow v Detroit Election Comm*, 305 Mich App 649, 659-660; 854 NW2d 489 (2014) (regarding requirements for write-in candidacy). Indeed, in a recent published decision involving nearly identical election-law issues, this Court followed the trend of reviewing the trial court's rulings on the merits postelection. *Davis v Secretary of State*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 362841); slip op at 8-9.

This appeal is not limited to claims of error directly implicating the 2022 election. Davis also raises issues regarding the procedures for reassigning a case following disqualification of the chief judge.[5] The candidacies of incumbent judges will likely be challenged again in the future, which may prompt the same or substantially similar arguments regarding disqualification of the candidate's colleagues and potentially lead to the same procedural anomalies that occurred here. Proper adjudication of election-law matters is a publicly significant issue. *Davis*, ___ Mich App at ___; slip op at 8. Related procedural matters ought to be addressed, but could evade timely judicial review when tied to time-sensitive substantive election-law issues. Considering the subject matter of Davis's claims of error, we will not decline review on mootness grounds.

### III. REASSIGNMENT AFTER JUDICIAL DISQUALIFICATION

Davis argues that Judge Sullivan's order reassigning the case to Judge Lillard was void as a matter of law because it was entered in violation of MCR 2.613(B) and MCR 8.111(C)(1). While we agree that Judge Sullivan's order did not comply with MCR 8.111(C)(1) because he is not the chief judge and there is no record that he was designated to temporarily act as the chief judge, we find that Davis is not entitled to appellate relief because he has not demonstrated that he was prejudiced by Judge Sullivan's involvement in the reassignment.

Davis's argument is preserved as it relates to MCR 8.111(C)(1).[6] But Davis's position regarding MCR 2.613(B) is being raised for the first time on appeal and thus is unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "Michigan generally follows the 'raise or waive' rule of appellate review," under which failure to timely raise an issue before the trial court constitutes waiver of that issue on appeal. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). But "this Court may overlook preservation requirements

---

[5] Pursuant to Wayne Circuit Court Local Administrative Order 2022-04, all election issues must be reassigned to the chief judge.

[6] We review the proper interpretation and application of court rules de novo as a question of law. *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005).

if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). In this case, we elect to consider Davis's unpreserved argument regarding MCR 2.613(B) because it is necessary to a proper determination of the case.

Preliminarily, we must first address Fresard, Ramsey, and Hathaway's contention that Davis waived review of this issue twice in the lower court proceedings. First, when Judge Biernat held oral argument regarding the motion to disqualify Chief Judge Kenny, he asked whether Davis was still seeking dismissal of the entire Wayne Circuit Court bench. Davis responded that he did not feel that relief was necessary any longer because he had faith that the other judges would "do the right thing" by disqualifying themselves. Considering Davis's new stance, Judge Biernat considered only whether Chief Judge Kenny could preside over the case. Fresard, Ramsey, and Hathaway assert that Davis waived this claim of error for a second time when he chose to abandon his right to review of Judge Lillard's decision denying Davis's motion to disqualify herself and the remaining judges of the Wayne Circuit Court. In his "notice of withdrawal," Davis described the lengthy disqualification proceedings that had occurred, noted that an additional review by Judge Biernat would further delay adjudication of Davis's time-sensitive legal arguments on the merits, and concluded that Judge Lillard "can be fair and impartial in adjudicating the merits of this case." According to Fresard, Ramsey, and Hathaway, Davis's concessions waived review of any forum-related arguments.

"A waiver is the intentional and voluntary relinquishment of a known right." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 585; 939 NW2d 705 (2019) (cleaned up). Waiver may be established by "express declarations or by declarations that manifest the parties' intent and purpose." *Dep't of Licensing & Regulatory Affairs v Gordon*, 323 Mich App 548, 562; 919 NW2d 77 (2018) (cleaned up). We find the argument in favor of waiver unpersuasive. At most, one could reasonably argue that Davis waived any contention that Judge Lillard, along with the entire Wayne Circuit Court judiciary, should be disqualified based on partiality arising from their professional relationships with the incumbent candidates. But Davis's claims of error regarding Judge Lillard's involvement in this case are not premised on whether Judge Lillard was a fair and impartial decisionmaker. Rather, he challenges the procedures by which the matter came to be on Judge Lillard's docket. And although Davis raised his procedural argument, in part, in his motion to disqualify Judge Lillard, it is clear from his notice of withdrawal that Davis's decision to proceed before Judge Lillard without further review was driven by concerns regarding the fast-approaching election and his belief regarding Judge Lillard's neutrality—he did not express or imply acquiescence to the propriety of Judge Sullivan's reassignment order. Consequently, he did not waive this issue.[7]

---

[7] Hathaway states that this Court already took judicial notice of Judge Sullivan's order as controlling when it dismissed plaintiff's complaint for superintending control. But this Court's order merely presumed that Judge Sullivan's order was controlling, without analysis. *In re Robert T Davis*, unpublished order of the Court of Appeals, entered September 15, 2022 (Docket No. 362987). "A matter that a tribunal merely assumes in the course of rendering a decision, without

Davis argues that Judge Sullivan violated MCR 2.613(B) by purportedly attempting to set aside or vacate Judge Hubbard's order disqualifying the entire Wayne Circuit Court bench. MCR 2.613(B) states:

> A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter.

By Davis's reasoning, because Judge Hubbard's disqualification order was entered before Judge Sullivan reassigned the case to Judge Lillard, Judge Hubbard's order must be controlling since Judge Sullivan could not set aside or vacate Judge Hubbard's earlier order. We disagree.

Davis's entire argument is premised on his belief that Judge Hubbard's order was properly entered, but that belief is not born out by the record. Motions for disqualification of a judge are generally governed by MCR 2.003. In a circuit court, the challenged judge decides the motion. MCR 2.003(D)(3)(a). If that judge denies the motion,

> (i) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo;

> (ii) in a single-judge court, or if the challenged judge is the chief judge, on the request of a party, the challenged judge shall refer the motion to the state court administrator for assignment to another judge, who shall decide the motion de novo. [MCR 2.003(D)(3)(a)(i) and (ii).]

In this case, when Chief Judge Kenny denied Davis's disqualification motion, the subsequent de novo review was required to be undertaken by another judge assigned by the SCAO. MCR 2.003(D)(3)(a)(ii). After the SCAO's first selection was unable to hear the case, the SCAO selected Judge Biernat, who subsequently disqualified Chief Judge Kenny based on an appearance of impropriety. Under MCR 2.003(D)(4)(a), "when a judge is disqualified, the action must be assigned to another judge of the same court, or, if one is not available, the state court administrator shall assign another judge." At the time of Judge Biernat's decision, only Chief Judge Kenny and Judge Burton had been disqualified from the case, leaving over 50 Wayne Circuit Court judges as possible alternatives for reassignment under MCR 2.003(D)(4)(a).

This issue focuses on the manner that the case was reassigned when it returned to Wayne Circuit Court, which resulted in two conflicting orders. Judge Hubbard was the first to act—she entered a sua sponte order disqualifying herself and the rest of the Wayne Circuit Court bench, followed by a detailed opinion. The day after Hubbard entered her opinion, Judge Sullivan entered

---

deliberation or analysis, does not thereby set forth binding precedent." *Riverview v Michigan*, 292 Mich App 516, 523; 808 NW2d 532 (2011).

an order reassigning the case from Chief Judge Kenny to Judge Lillard due to Judge Biernat's order disqualifying Chief Judge Kenny. Davis characterizes Judge Sullivan's actions as an improper attempt to set aside or vacate Judge Hubbard's order disqualifying all Wayne Circuit Court judges, contrary to MCR 2.613(B).

Davis's theory is fundamentally flawed because his case was never formally assigned to Judge Hubbard. Although a draft order transferring the case to Judge Hubbard was filed as an exhibit to Davis's emergency motion to disqualify Judge Lillard and the entire Wayne Circuit Court bench, there is no evidence that it was signed by any Wayne Circuit Court judge. Moreover, the draft order was not entered in the trial court's register of actions. MCR 2.602(A)(1) provides that "all judgments and orders must be in writing, signed by the court, and dated with the date they are signed." A trial court speaks through its written orders; an order does not become effective until it is reduced to writing and signed. *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977).[8] Until the case was properly transferred to another judge in accordance with the court rules, it remained assigned to Chief Judge Kenny. See *Schell v Baker Furniture Co*, 461 Mich 502, 515; 607 NW2d 358 (2000) (setting aside dismissal orders entered by chief judge because, absent "a proper reassignment order under MCR 8.111," the cases remained assigned to original judges, precluding substantive or dispositive rulings by the chief judge). Judge Sullivan's September 13, 2022 order was the first signed, written order to transfer the case from Chief Judge Kenny to another judge of the same court as required by MCR 2.003(D)(4)(a). Because the case was never formally assigned to Judge Hubbard, Judge Sullivan did not violate MCR 2.613(B).

---

[8] Following the oral argument before this Court, plaintiff filed a motion requesting that we take judicial notice of the September 8, 2022 draft order and a September 19, 2022 affidavit of Richard Lynch, Wayne Circuit Court's general counsel, that was filed in another matter before this Court. Courts may take judicial notice of facts "not subject to reasonable dispute," meaning facts that are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). We decline to take judicial notice of the contents of the unsigned order that was not entered in the register of actions. We also decline to take judicial notice of the contents of the Lynch affidavit that was not in the lower court record or otherwise part of the record in this case. We note that plaintiff's post-oral argument motion quotes the Lynch affidavit as describing the September 8, 2022 draft order as a "preliminary order of assignment" and that "Case Processing notified Judge Hubbard of the assignment by case processing . . . ." Reassignments do not occur by "preliminary orders" or by "Case Processing," but rather by way of a written order signed by the chief judge or a judge designated to act temporarily. The draft order does not meet these requirements. Finally, during the oral argument before this Court, plaintiff referred us to Judge Lillard's comments at the October 4, 2022 hearing as explaining how the reassignment to Judge Hubbard had occurred. But no such comments were made as to the reassignment to Judge Hubbard. Instead, Judge Lillard simply explained that the court's general counsel sent an e-mail to the Wayne Circuit Court judges stating that the case needed to be reassigned and directing that a form be completed "if any of [the judges] felt the need to recuse [them]selves from the case[.]" Judge Lillard stated, "I didn't see a need to recuse myself, so I didn't fill it out and send it back." Thereafter, Judge Lillard "got blind drawn the case."

Davis further argues that Judge Sullivan's order was invalid because MCR 8.111(C)(1) only allows a chief judge to order reassignment:

> If a judge is disqualified or for other good cause cannot undertake an assigned case, the chief judge may reassign it to another judge by a written order stating the reason. To the extent feasible, the alternate judge should be selected by lot. The chief judge shall file the order with the trial court clerk and have the clerk notify the attorneys of record. The chief judge may also designate a judge to act temporarily until a case is reassigned or during a temporary absence of a judge to whom a case has been assigned. [MCR 8.111(C)(1).]

The record is silent as to how Judge Sullivan was chosen to sign the order transferring the case from Chief Judge Kenny to Judge Lillard. Although the court rule permits the chief judge to designate another judge to act in a case temporarily pending reassignment, there are no written orders reflecting such a designation. "[I]t is well settled that courts can only act through their written judgments or orders." *Wessels v Garden Way, Inc*, 263 Mich App 642, 653; 689 NW2d 526 (2004). Given this gap in the record, we agree that Judge Sullivan's reassignment order was not entered in compliance with MCR 8.111(C)(1). But not all errors in trial court proceedings require appellate relief. Rather,

> [a]n error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. [*Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 308; 968 NW2d 367 (2021), quoting MCR 2.613(A).]

Determining whether appellate relief should be afforded in the interest of substantial justice "requires courts to undertake the difficult task of discerning whether the error prejudiced the party challenging it." *Law Offices of Jeffrey Sherbow*, 507 Mich at 308.

Davis argues that he was prejudiced by this error because "the lower court was motivated by impermissible considerations." Specifically, Davis alleges that the trial court's general counsel opined that Judge Hubbard's decision was incorrect and that she lacked authority to disqualify the entire Wayne Circuit Court bench. Even accepting Davis's unsupported assertion as true, it goes to the question of whether error occurred—not the existence or prejudice arising from the error. Judge Lillard asserted that she was selected by blind draw and expressed confidence that she could hear the case impartially, noting that she had not hesitated to reach decisions that adversely affected friends or colleagues in the past. More importantly, Davis expressly opined that Judge Lillard could adjudicate the merits of the case fairly and impartially. We find that Judge Sullivan's role in reassigning the case from Chief Judge Kenny to Judge Lillard did not prejudice Davis in any manner and thus he has not established he is entitled to any relief from the order.

## IV. SUBJECT-MATTER JURISDICTION

Davis contends that Judge Lillard lacked subject-matter jurisdiction to enter any orders in this case. We disagree.

Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007). Circuit courts of this state have general jurisdiction that "extends to all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." *Schaaf v Forbes*, 338 Mich App 1, 12; 979 NW2d 358 (2021), quoting MCL 600.605. "It is presumed that circuit courts have subject-matter jurisdiction unless jurisdiction is expressly prohibited or given to another court by constitution or statute." *Southfield v Shefa, LLC*, 340 Mich App 391, 407; 986 NW2d 607 (2022) (cleaned up). If it is established that a circuit court is without subject-matter jurisdiction, "any action with respect to such a cause, other than to dismiss it, is absolutely void." *Schaaf*, 338 Mich App at 12 (cleaned up). Conversely, when the circuit court is vested with subject-matter jurisdiction, any error in its exercise of that jurisdiction renders the court's actions "merely voidable." *Luscombe v Shedd's Food Prod Corp*, 212 Mich App 537, 542; 539 NW2d 210 (1995).

Davis has not identified a statute or constitutional provision that would divest the Wayne Circuit Court of its general jurisdiction over civil claims and, instead, contends that Judge Lillard lacked subject-matter jurisdiction because Judge Sullivan did not have authority to enter the order transferring the case to her. Davis's jurisdictional challenge is premised on the procedural error that occurred when Judge Sullivan reassigned the case without having been properly designated to act in the matter by the chief judge in accordance with MCR 8.111(C)(1). "There is a wide difference between a want of jurisdiction, in which case the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void although it may be subject to direct attack on appeal." *Foster v Foster*, 509 Mich 109, 125; 983 NW2d 373 (2022) (cleaned up). Although Davis's position falls within the latter category, he has adopted the common practice "of saying that a court had no 'jurisdiction' to take certain legal action when what is actually meant is that the court had no legal 'right' to take the action, that it was in error." *Id*. at 124 (cleaned up). As a member of the circuit court, Judge Lillard clearly had subject-matter jurisdiction to adjudicate Davis's claim, regardless of the procedural error that arose in assigning the case to her. See *Graziano v Brater*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358913); slip op at 4 ("Subject-matter jurisdiction is the power of the court to decide the *type* of case—not the particular case before it.").

## V. LACHES

Davis next argues that the trial court erred in its application of laches. We disagree.

We review a trial court's application of laches de novo. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013). Laches is an equitable doctrine that bars a claim when "there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005) (cleaned up). "[L]egal challenges that

affect elections are especially prone to causing profound harm to the public and to the integrity of the election process the closer in time those challenges are made to the election, making laches especially appropriate to apply in such matters." *Davis*, ___ Mich App at ___; slip op at 9.

The trial court determined that Davis's claims concerning Fresard and Ramsey were barred by laches due to Davis's unreasonable delay in filing suit and the precious time he wasted at the outset of the case litigating judicial disqualifications. Davis disagrees, reasoning that he commenced this action well before the WCEC convened to approve printing the ballots for the November 8, 2022 general election. Davis also argues that he should not be faulted for pursuing his constitutional right to an unbiased judge, as he had no control over the time it took to resolve the disqualification issues.

Fresard filed her AOI with the Secretary of State on March 17, 2022, and Ramsey's AOI was filed on March 9, 2022. Davis allowed more than four months to elapse before he filed suit on July 26, 2022. Davis explained that he filed an earlier lawsuit against the Highland Park City Clerk challenging a mayoral candidate's AOI on the same grounds and told the trial court that he "could not have filed this case until [he] saw exactly what the Supreme Court was going to do with the Highland Park City Council's emergency application for leave." Although the trial court did not address Davis's explanation, this did not weigh against application of laches. See *Davis*, __ Mich App at ___ n 12; slip op at 10 n 12 (rejecting delay attributed to desire to resolve related legal challenges as unacceptable explanation). While a favorable resolution of Davis's Highland Park case would undoubtedly make it easier to establish his entitlement to relief in subsequent cases involving the same issues, Davis was by no means *required* to await final resolution of that litigation before initiating this matter.

It is evident from the timeline of the Highland Park case[9] that Davis was keenly aware months before he initiated the instant case that a candidate's failure to complete the party-affiliation portion of the AOI form could constitute grounds for excluding the candidate from the ballot. Davis sought mandamus relief in the Highland Park action nearly two months after Fresard and Ramsey filed their defective AOIs. Davis's contention that he could not file the instant action before learning how the Supreme Court would respond in the Highland Park action is disingenuous because he did not wait for a final resolution of that issue. Rather, he commenced this case on

---

[9] The trial court denied Davis's requested relief on May 23, 2022. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544). Davis promptly appealed the trial court's decision, and this Court reversed and remanded on June 2, 2022, for entry of a writ of mandamus. *Id*. In doing so, this Court held that MCL 168.558(2) required an AOI to include "the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation," and silence in the face of a clear statutory command would not suffice. *Id*. at 3-4. The nonparty mayoral candidate at issue attempted to appeal this Court's ruling, but the Supreme Court denied the candidate's motion to intervene and dismissed his application for leave to appeal on June 7, 2022. *Davis v Highland Park City Clerk*, 509 Mich 1029 (2022). The Highland Park City Council, an intervening defendant in the trial court, sought leave to appeal on June 29, 2022, which the Supreme Court denied on September 14, 2022. *Davis v Highland Park City Clerk*, 510 Mich 923 (2022).

-11-

July 26, 2022, which was approximately seven weeks before the Supreme Court denied leave to appeal in the Highland Park action. We do not fault Davis for filing suit before the Supreme Court's final order in the Highland Park action, but the timing of the commencement of this action undermines Davis's explanation for the delay.

The trial court also determined that Davis's pursuit of the disqualification motions weighed in favor of barring his claim based on laches. Of course, "the right to a hearing before an unbiased and impartial decisionmaker is a basic requirement of due process." *Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 508 Mich 209, 244; 973 NW2d 90 (2021) (cleaned up). We do not fault Davis for asserting this constitutional right, but the trial court correctly recognized that Davis's back-and-forth stance on the disqualification issue delayed the adjudication of the substantive legal issues. Davis abandoned his request to disqualify the entire Wayne Circuit Court bench when the issue was before Judge Biernat. Instead of resolving the issue at that time, Davis moved to disqualify Judge Lillard nearly a month later. Given the strict time constraints in election-related matters, every day matters. The 35 days that elapsed between Judge Biernat's decision and Judge Lillard's denial of Davis's second disqualification motion was a delay created by Davis's own actions.

Davis further argues that the trial court erred by applying laches to bar his claim because defendants all violated portions of Michigan election law and, therefore, have unclean hands.[10] We reject this argument for the same reasons we set forth in *Davis*, ___ Mich App at ___; slip op at 10-11:

> Davis submits that defendant has unclean hands because it "acted in violation of law" by failing to enforce MCL 168.558(2) in accordance with the Court of Claims' interpretation. But this case raised a challenge to statutory language, a question of law. *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 380; 781 NW2d 310 (2009). The duty to interpret and apply the law belongs to the courts. *Id*. Moreover, defendant explained that it did not require a statement of no party affiliation be placed on the AOI form because judicial offices by their nature are nonpartisan and not as an act of defiance of the statutory law.[11] Plaintiff has not shown that defendant engaged in the kind of misconduct that would constitute "unclean hands."
>
> Furthermore, plaintiff has also not shown that defendant's conduct stymied plaintiff's ability to commence this action sooner. See [*Attorney General v*]*Thomas*

---

[10] The trial court only applied the equitable doctrine to Davis's claims concerning Fresard and Ramsey and thus we limit our review of this argument to those two defendants.

[11] The Secretary of State, the defendant in *Davis*, was not involved in this action and, thus, did not offer the same explanation regarding why it accepted AOIs that did not include a statement regarding party affiliation. The reasoning in *Davis* remains applicable nonetheless because the Secretary of State's position was originally advanced by the Michigan Bureau of Elections, *Davis*, ___ Mich App at ___; slip op at 4, and Fresard and Ramsey both relied on assurances from the same bureau that their AOIs were properly completed.

*Solvent Co*, 146 Mich App [55, 66; 380 NW2d 53 (1985)] (the defendant could not avail itself of laches because it repeatedly refused to conduct tests reasonably requested by the plaintiff that would have revealed contamination caused by the defendant at an earlier date). This was also not a case in which the challenged candidates were substantively ineligible to hold office and falsified their AOIs, see *Davis v Chatman*, 292 Mich App 603, 619-622; 808 NW2d 555 (2011), and where defendant actually found any falsification. In addition, the public would suffer no real harm as an affirmative declaration of no party affiliation, while mandatory, has little practical effect when a judicial candidate must appear on the nonpartisan portion of the ballot. In short, plaintiff misapprehends what "unclean hands" means, and the trial court did not err by refusing to apply it to preclude defendant from availing itself of the doctrine of laches.

Davis next argues that laches was erroneously applied in this case because "[e]quity does not apply when a statute controls." *Gleason*, 323 Mich App at 318. Davis reasons that laches could not preclude his claim because MCL 168.558(4) provides an adequate remedy for a candidate's submission of a defective AOI, namely, noncertification of the candidate by the Secretary of State. Again, we reject this argument for the same reasons we set forth in *Davis*, ___ Mich App at ___; slip op at 11:

> Plaintiff further alleges that laches cannot apply because equitable doctrines are inapplicable where a remedy is provided by statute, citing *Gleason v Kincaid*, 323 Mich App 308, 318; 917 NW2d 685 (2018). However, "the Michigan Election Law does not set forth any explicit procedure for resolving challenges to AOIs." *Moore* [*v Genesee Co*,] 337 Mich App [723, 732; 976 NW2d 921 (2021)]. And because mandamus and declaratory relief are themselves equitable in nature, there is no sound basis for concluding that equitable defenses, including laches, should not apply.

Lastly, Davis contends in his reply brief that the WCEC waived laches as an affirmative defense by failing to file a responsive pleading or preanswer dispositive motion raising the defense. This argument is not properly before this Court because it was raised for the first time in his reply brief, which "must be limited to 'rebuttal of the arguments in the appellee's or cross-appellee's brief. . . .' " *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012), quoting MCR 7.212(G). The WCEC has not filed a brief on appeal to take a position regarding laches. Thus, Davis's argument is not an appropriate rebuttal.[12]

---

[12] Even if this question was properly before us, it lacks merit. "Under MCR 2.111(F)(3), affirmative defenses must be raised in the responsive pleading or in a motion for summary disposition made before the filing of a responsive pleading, and the failure to do so constitutes a waiver of the defense." *Chmielewski v Xermac, Inc*, 216 Mich App 707, 712; 550 NW2d 797 (1996). Apart from an appearance by counsel, the WCEC filed only one document in this case: a response to plaintiff's second motion for declaratory and mandamus relief. The response was the functional equivalent of a motion for summary disposition, even if not titled as such, because it

## VI.  AOI DEFECTS

Davis further asserts that the trial court erred by granting summary disposition to Fresard and Ramsey because they clearly failed to comply with the AOI requirements outlined in MCL 168.558.  We decline to address this argument because we find that the trial court did not err by applying laches to bar Davis's claims.[13]

## VII.  HATHAWAY'S NAME

Lastly, Davis argues that the trial court should not have dismissed his claim relating to Hathaway because MCL 168.560b required Hathaway's original surname, Bobak, to be included in his name on the ballot.  But, in raising this argument in his statement of questions presented, Davis asserts that the trial court erred by granting Hathaway's motion for summary disposition.  It is undisputed that Hathaway did not move for summary disposition.  Rather, the merits of the claim concerning Hathaway were before the court in the context of Davis's motion for declaratory and mandamus relief.  Davis's statement of questions presented does not mention his motion for declaratory judgment or his request for a writ for mandamus.  Accordingly, this argument is waived and we decline to address it.  *Seifeddine*, 327 Mich App at 521; see also MCR 7.212(C)(5).

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra

RICK, J., did not participate.

---

asked the trial court to dismiss plaintiff's case for several reasons, including laches.  See *Adams*, 276 Mich App at 715 ("[W]e are not bound by a party's choice of labels because this would effectively elevate form over substance.").

[13] Davis also advances arguments in his brief on appeal that the trial court erred by denying his motion for declaratory judgment and his request for a writ of mandamus.  He further argues that Crespo's AOI failed to comply with the AOI requirements outlined in MCL 168.558.  But these arguments are waived because they were not in Davis's statement of questions presented.  *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019); see also MCR 7.212(C)(5) (stating that an appellant's brief must contain "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal.").  Accordingly, we decline to address these arguments.