*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* YEHG.

UNPUBLISHED
August 25, 2025
2:53 PM

LAURA K. REESE,

      Petitioner-Appellee,

v

No. 371802
Washtenaw Probate Court

YEHG, also known as YECD, also known as ECD,

LC No. 24-000337-MI

      Respondent-Appellant.

Before: BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

In this civil-commitment action, respondent appeals as of right the probate court's amended second order for involuntary mental health treatment. We affirm.

## I. FACTUAL BACKGROUND

Respondent was hospitalized after creating a disturbance at a McDonald's restaurant. After the incident occurred, a social worker filed a petition for involuntary mental health treatment. The petition alleged that respondent displayed signs of psychosis, actively responded to internal stimuli, accused the social worker of being a spy, and refused to disclose her identity. Two psychiatrists filed reports stating that respondent suffered from psychosis, was delusional, presented a danger to herself and others, could not care for her own basis needs, and was unwilling to voluntarily participate in treatment. After receiving testimony at the petition hearing that was consistent with the allegations in the petition and reports from the psychiatrists, the probate court entered an order authorizing up to 60 days of inpatient treatment and up to 180 days of outpatient treatment.

Shortly before respondent's initial period of inpatient hospitalization was set to expire, respondent's treating psychiatrist filed a second petition for involuntary mental health treatment. The psychiatrist alleged that respondent suffered from schizophrenia, hit a psychiatrist at the command of voices in her head, was highly delusional, believed she was a deity, stated that she

-1-

had miracles planned, and was noncompliant with taking her medication. Another psychiatrist at the same facility filed a report stating that respondent could reasonably be expected to harm herself or others. He explained that police intervention was needed as a result of her assault on a psychiatrist. He also noted that respondent suffered from hallucinations and believed in the existence of portals to other universes. The psychiatrist opined that respondent could not take care of her own basic needs, did not understand her need for treatment, and was not compliant with taking her medication. He recommended respondent receive inpatient treatment followed by outpatient treatment.

At a hearing on the petition, respondent's treating psychiatrist testified that respondent believed she was on a spiritual mission to close a portal that she opened. The psychiatrist explained that respondent also engaged in what was described as "some type of Judaic ritual" that involved shouting profanity and racial epithets. While respondent had shown improvement during her hospitalization, the psychiatrist opined that respondent was still highly delusional and had recently started to resist taking her medication. Respondent also testified at the hearing, stating that although she did not believe she was God or another deity, she had the power to heal herself. Respondent testified that she did not have a mental illness, but that she came "there" through a portal. Respondent affirmed that this was a real spirit portal and that it expressed racial epithets. Respondent denied that she ever voiced a racial slur. Respondent said she would take her medication if she was discharged. However, respondent would be homeless if she was discharged. Respondent stated that she wanted a tent so she could live near the hospital for treatment purposes.

The probate court found there was clear and convincing evidence that respondent needed continued treatment for her schizophrenia. The court further concluded that respondent's history of violent acts indicated that she could reasonably be expected to harm herself or others in the near future. Respondent's inability to maintain stable living arrangements also indicated to the probate court that she could not care for her own basic needs. The probate court also found that respondent's judgment was impaired by her illness, noting that she did not understand her need for treatment and was unwilling to comply with necessary treatments. Finally, the court found that respondent's risk of relapsing also indicated that she posed a risk to herself and others. The probate court granted the petition, finding that hospitalization was the least restrictive form of treatment adequate to meet respondent's needs. It subsequently entered a second order for involuntary mental health treatment. This appeal followed.

## II. ANALYSIS

Respondent argues that the probate court erred by finding that she required continuing involuntary mental health treatment. We disagree.

"[T]his Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019) (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation mark and citation omitted). "In addition, we review de novo questions of statutory interpretation." *Gleason v Kincaid*, 323 Mich App 308, 317; 917 NW2d

685 (2018). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Id*. at 317-318.

The Mental Health Code, MCL 330.1001 *et seq*., contains the specific procedures for obtaining second or continuing orders for involuntary mental-health treatment. See MCL 330.1473. Before entering a second or continuing order for involuntary treatment, the court must first find that the respondent "continues to be a person requiring treatment." MCL 330.1472a(4). See also *In re Portus*, 325 Mich App 374, 385; 926 NW2d 33 (2018). MCL 330.1401(1) provides that the phrase "person requiring treatment" can mean any one of these three definitions:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

> (b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

The Mental Health Code defines "mental illness" as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

The probate court did not clearly err when it found respondent suffered from a mental illness. First, respondent's treating psychiatrist testified that respondent suffered from schizophrenia and described schizophrenia as a thought disorder.[1] Another psychiatrist also opined that respondent suffered from schizophrenia. Second, the record demonstrates that respondent's mental illness impaired her capacity to recognize reality because:

---

[1] "An individual may not be found to require treatment unless at least 1 physician or licensed psychologist who has personally examined that individual testifies in person or by written deposition at the hearing." MCL 330.1461(1). Dr. Laura K. Reese, who filed this petition, satisfied this requirement because she is a doctor, personally examined respondent, and provided related testimony at the petition hearing.

- She conversed with herself;

- She believed she was a deity or represented one;

- She thought she was on a spiritual mission;

- She believed that she had opened a portal and believed that she needed to close the portal.

The record also demonstrates that respondent's mental illness impaired her behavior, as some of her hallucinations involved commands to attack hospital staff. Further, the record indicates that respondent's mental illness impaired her judgment by causing her to believe that she could heal herself and that she did not have a mental illness. That respondent was homeless before she was hospitalized also suggests that her illness rendered her unable to cope with the demands of normal life. The foregoing strongly demonstrates that the probate court did not clearly err when it found that respondent had a mental illness. See MCL 330.1400(g).

The probate court also did not clearly err when it found that respondent was a person in need of treatment under MCL 330.1401(1)(a). Respondent's treating psychiatrist testified:

- Respondent intentionally harmed her previous psychiatrist;

- Respondent lunged at another patient;

- Respondent attacked a staff member;

- Respondent kicked a security guard.

While none of these attacks appear to have resulted in serious harm, respondent's willingness to listen to voices in her head allegedly instructing her to attack others demonstrates that the probate court did not clearly err by finding there was a reasonable expectation that she could seriously injure herself or others in the near future. Further, another psychiatrist opined that respondent was dangerous because she was assaultive and suffered from hallucinations. These facts were sufficient for the probate court to form a firm conviction that respondent was a person needing treatment under MCL 330.1401(1)(a).

Additionally, the probate court did not clearly err by finding that respondent was a person in need of treatment under MCL 330.1401(1)(b). When she was on her own, respondent did not provide herself with food or shelter. That respondent wanted to set up a tent near a hospital demonstrated that she did not have a good grasp on how to provide for her basic needs. Further, the fact that respondent's delusions controlled her behavior suggested that she was unable to address her basic needs. Additionally, both psychiatrists opined that respondent's mental illness rendered her unable to care for her own basic needs. These facts were sufficient for the probate court to form a firm conviction that respondent was a person needing treatment under MCL 330.1401(1)(b).

Finally, the probate court did not clearly err by finding that respondent was a person in need of treatment under MCL 330.1401(1)(c). Respondent refused to recognize that she had a mental illness and testified that she did not have a mental illness. Though respondent ultimately

agreed that she would take her medication if she was discharged, this statement was undermined by her unwillingness to take her medication while under direct medical supervision, as well as her belief that she could heal herself. The foregoing demonstrated respondent's "lack of understanding of the need for treatment" and "unwillingness to voluntarily participate in or adhere to treatment." MCL 330.1401(1)(c). Further, respondent's psychiatrist testified that the medication respondent was taking was necessary to address her mental illness. The improvement respondent showed after beginning medication demonstrated that she needed to remain in treatment to avoid a harmful relapse. Last, as discussed earlier, respondent's mental illness rendered her a danger to herself and those around her. These facts were sufficient for the probate court to form a firm conviction that respondent was a person needing treatment under MCL 330.1401(1)(c).

In light of the foregoing, we conclude that the probate court did not clearly err when it found respondent was a person requiring treatment under MCL 330.1401(1)(a) through (c). Therefore, the probate court did not abuse its discretion when it entered the second order for involuntary mental health treatment.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Michelle M. Rick

-5-