*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PURE PROPERTY HOLDINGS, LLC,

      Plaintiff-Appellant,

v

CITY OF INKSTER, VERNA CHAPMAN in her capacity as INKSTER CITY CLERK, and INKSTER CITY COUNSEL,

      Defendants-Appellees.

UNPUBLISHED
October 22, 2025
8:56 AM

No. 372560
Wayne Circuit Court
LC No. 23-013962-AW

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

In this action involving local licenses to operate marijuana establishments, plaintiff appeals as of right the trial court's order granting summary disposition to defendants, City of Inkster (the City), Verna Chapman in her capacity as Inkster City Clerk (the City Clerk), and Inkster City Council (the City Council) (collectively, defendants), under MCR 2.116(C)(10) (no genuine issue of material fact).[1] Because this appeal is moot, we affirm.

---

[1] In this case, defendants moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and (C)(10), and the trial court did not specifically state which subrule(s) supported its decision. However, we discern from the record that subrule (C)(10) was the appropriate ground because the court considered evidence beyond the pleadings. *Corbin by Next Friend Corbin v Meemic Ins Co*, 340 Mich App 140, 144; 985 NW2d 217 (2022); see *Krass v Tri-Co Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999) (providing that when the trial court does not specify "which section of MCR 2.116 the trial court based its ruling, and both the defendant and the trial court relied on documentary evidence beyond the pleadings in support of the defendant's motion for summary disposition, this Court must construe the defendant's motion as being granted pursuant to MCR 2.116(C)(10)").

I. BASIC FACTS AND BACKGROUND

In furtherance of the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., and the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.2701 *et seq*.,[2] the City enacted a series of ordinances imposing regulatory requirements on the establishment and operation of recreational marijuana establishments, including provisions governing zoning and land use restrictions applicable to such entities. Inkster Ordinances, § 124.01 *et seq*., pertains to the licensure of marijuana businesses, and Inkster Ordinances, § 155.011 *et seq*., regulates the zoning of said businesses.[3] Inkster Ordinances, § 124.03(G), as amended by Resolution No. 04-23-058R, sets forth the procedures prescribing the application process for a marijuana business license including, in part:

> (10) A copy of approvals from the City Planning and Building Department including: special land use, site plan and building permits.

> (11) A copy of the certificate of compliance from the city for the location of the marijuana related business.

> (12) Proof that all fees imposed hereunder have been paid in full and that the applicant is not otherwise indebted to the City or in default of any other provision of the Inkster City Code.

Further, the City Clerk "may not issue a license under this chapter until the applicant has completed the application, provided all the information and documentation required herein and paid all fees." Inkster Ordinances, § 124.03(H). Inkster Ordinances, § 155.150E, as amended by Resolution No. 04-23-059R, additionally provides, in pertinent part:

> (B) Recreational marijuana retailer establishment shall not be located within a 1,000[-]foot radius of a lawfully existing medical marijuana provisioning center, recreational marijuana retailer establishment, or recreational marijuana microbusiness, measured as the shortest distance from front door to front door,

---

[2] "Although the [ordinance] provisions at issue refer to 'marihuana[,]' . . . by convention this Court uses the more common spelling 'marijuana' in its opinions." *People v Carruthers*, 301 Mich App 590, 593 n 1; 837 NW2d 16 (2013).

[3] During the pendency of plaintiff's marijuana business license application, the City amended the pertinent ordinances regarding marijuana establishments. On April 17, 2023, the City Council "hereby approved an amendment to the City's zoning ordinance, Title XI, Chapter 124," and, "to the City's zoning ordinance, Title XV, Chapter 155, Articles 29 and 146 to update the definitions and standards related to Marijuana uses." See Resolution Nos. 04-23-058R and 04-23-059R. However, because the prior ordinances were in effect at the time of plaintiff's initial application, the parties cite to the previous version of the ordinances in their respective lower court filings and on appeal, and the viability of plaintiff's application remains unchanged by the amendments, the previous versions of the relevant ordinances are provided.

except that a licensee who holds both a medical marijuana provisioning license and a recreational retailer license may co-locate both establishments in one building.

* * *

(H) Application for a recreational marijuana retailer establishment license shall be made to the City Clerk upon application forms provided by the Clerk for recreational marijuana retailer establishment license and signed by the applicant verifying the truth and accuracy of all information and representations in the application. Applications including information and documentation provided pursuant to an application shall be subject to the confidentiality rules under the Act. In addition to information and submittals, the application shall include payment of application fee in an amount set by the City Council.

In the present case, plaintiff acquired a property located at 29865 Michigan Ave., Inkster, Michigan, with the intention to operate the facility as a "marihuana provisioning center/retailer." On approximately January 2, 2023, plaintiff submitted its marijuana facility license application to the City and allegedly "provided all of the required information and applicable fees." At the time, there were three pending applications for marijuana facilities positioned with a 1,000-foot radius of one another, one by "NAR Cannabis," with a proposed location of 29899 Michigan Ave., Inkster, Michigan, one by "Planet Kush," with a proposed location of 29721 Michigan Ave., Inkster, Michigan, and one by plaintiff. Plaintiff's property is positioned between the two other applicants. Both NAR Cannabis and Planet Kush initiated the marijuana business license application process approximately one year before plaintiff, and, notwithstanding the 1,000-foot buffer requirement, the two entities were allegedly approved for a special land use permit. NAR Cannabis received its certificate of occupancy on March 23, 2023.

On April 24, 2023, the City's planning commission conducted a meeting, during which one of plaintiff's representatives was present, plaintiff presented its special land use application, and the planning commission unanimously recommended approval of plaintiff's application. Further, "[a]t the Planning Commission meeting, it was acknowledged that applications had been submitted for marijuana facilities within 1,000 feet of Plaintiff's Property, and that those applicants and Plaintiff were in a 'race to the finish,' meaning that the facility that was completed first would 'buffer out' the remaining applicants." The pertinent meeting minutes provided, "[Plaintiff] proposes to re-use the one-story 37,078 square foot building on the 2.0-acre site as a marijuana adult use retailer," and there was significant discussion regarding "the 1000-foot buffer as it relates to the 2 marijuana facilities on both sides of the subject facility, the what we are calling 'race to the finish' deadline, as well as other non-cannabis retailers, and the 15 percent equity for Inkster residents according to the city/local ordinance."

On May 1, 2023, the City Council held a meeting, which featured plaintiff's special land use application on the agenda; plaintiff's representative attended the meeting in order to present its special land use application and answer any questions. However, the City Council allegedly "refused to make any motion, vote, or otherwise consider Plaintiff's special land use application," and the pertinent meeting agenda further indicated that there was "no motion offered" regarding plaintiff's application. While not reflected in the meeting agenda, plaintiff's representative

-3-

"specifically asked the City Council why it refused to even consider Plaintiff's application but did not receive an answer."

On May 15, 2023, the City Council held a second meeting, during which the council unanimously voted to deny plaintiff's special land use application, notwithstanding the planning commission's unanimous recommendation for approval. The City Council further unanimously voted to "approve the cessation of accepting applications for Marihuana Establishments in the City of Inkster effective May 15, 2023."

The affidavit of Jane Dixon, a senior planner responsible for providing municipal planning services to the City, provides an alternative narrative regarding the underlying facts. Dixon contended that (1) on April 17, 2023, NAR Cannabis was the "the first Marijuana Facility on Michigan Avenue to complete substantial site compliance with the engineering and planning requirements and was recommended for approval for a certificate of occupancy,"[4] (2) on April 24, 2023, plaintiff requested a "special land use recommendation" before Dixon and the planning commission, (3) at the time of the April 24, 2023 planning commission meeting, plaintiff was "at risk of being buffered out" under the relevant zoning ordinance because NAR Cannabis and Planet Kush "were approximately one year ahead of Plaintiff but neither had beg[u]n operating," and (4) "Planet Kush filed its initial application in April 2022, while NAR had its first site plan in May 2022." Dixon further alleged that while plaintiff was aware that it "was at a high risk of being buffered out," plaintiff was "eager to continue through the process," resulting in the recommendation to the City Council for consideration of plaintiff's application.

In her affidavit, Dixon asserted that during the May 1, 2023 City Council meeting, the City Council did not issue a vote regarding plaintiff's special land use request, rather, plaintiff's matter was placed on the agenda for the May 15, 2023 City Council meeting. At the May 15, 2023 meeting, Dixon presented plaintiff's application on behalf of the planning commission, "Council then opened the review for [discussion], in which it participated in an 18[-]minute discussion where it addressed whether another marijuana facility would be harmonious with the Master Plan, the potential of economic improvement, odor control, and additional costs of the public services, and the City Council "addressed two other applicants which were ahead of Plaintiff at the time which if they finished first would buffer Plaintiff from operating." Dixon additionally alleged:

> During Discussion, Council raised several concerns particularly doubting whether granting the special land use would be harmonious with the master plan due to the negative community input and the potential ordinance violations. Council further expressed concerns about economic viability due to potential oversaturation and the additional costs that would be incurred for public services, particularly those from the Police Department.

---

[4] We note that while Dixon asserts that NAR Cannabis was not recommended for approval of a certificate of occupancy until April 17, 2023, the actual certificate of occupancy issued to NAR Cannabis is dated March 23, 2023.

-4-

Because of the foregoing, Dixon contended that the City Council unanimously voted to deny plaintiff's special land use application. On June 9, 2023, NAR Cannabis was "was issued a business license, thus ending the race and prohibiting any facility, including Plaintiff, to open within 1,000 square feet of it."

## II. PROCEDURAL HISTORY

On October 27, 2023, plaintiff filed a five-count complaint contending defendants administered the application process related to the establishment of marijuana facilities in a manner that was inconsistent with the city ordinances. Plaintiff alleged, "Defendants collectively mishandled and delayed Plaintiff's application such that it appears that Defendants' conduct was coordinated, intentional, and designed to harm Plaintiff and deprive Plaintiff of the equal opportunity to apply for and obtain a license." Plaintiff advanced claims of petition for writ of mandamus against the City Clerk, superintending control against the City Council, and violations of procedural due process, substantive due process, and equal protection of the law against all defendants, in addition to a request for injunctive relief "in the form of a preliminary injunction pursuant to MCR 3.3 l0(A) and/or pursuant to MCL § 600.4411." Plaintiff further requested that the trial court: (1) "Order the Clerk to issue a decision as to Plaintiff's marijuana business license application"; (2) "Order the City Council to issue a decision as to Plaintiff's special land use application consistent with [Inkster Ordinances,] § 155.288(C)(3)"; (3) "Temporarily and preliminarily enjoin Defendants from awarding licenses to any applicant until a full determination is made on the issues and claims in this case"; and (4) "Permanently enjoin Defendants from subjecting Plaintiff and other applicants to policies and practices that violate their rights and from violating the Ordinances."

In lieu of filing an answer, defendants moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and (C)(10) on November 29, 2023, contending (1) plaintiff improperly sought a writ of mandamus against the City Clerk because plaintiff did not maintain a clear, legal right to performance due to plaintiff's "failure to satisfy the requirements for obtaining a business license, compounded by the fact Plaintiff's property is located within 1,000 feet of an already existing operating facility [NAR Cannabis]," (2) plaintiff's request for superintending control of City Council is inappropriate because defendants complied with the pertinent ordinances and explained the denial of plaintiff's application, (3) the refusal "to issue a license, even where a state official allegedly violated state law or administrative procedures, is not a municipal action that constitutes a violation of substantive due process," and (4) a "first time applicant for a license is not entitled to minimal due process." Defendants further argued that (1) plaintiff "erroneously contends that it was treated differently than others similarly situated," but plaintiff "cannot demonstrate that it is similarly situated in all material aspects to its competitors nor that there was not a rational basis for Defendants' actions." Defendants additionally advanced that injunctive relief was unwarranted because plaintiff was unlikely to succeed on the merits, plaintiff would not suffer irreparable harm, defendants maintained "the inherent authority to regulate the number of Marijuana facilities in its City limits," and "the community input has strongly been against the opening of more marijuana facilities." Defendants provided Dixon's affidavit, in addition to links to the videorecordings depicting the May 1, 2023, and May 15, 2023 City Council meetings, in their motion for summary disposition.

On February 6, 2024, NAR Cannabis moved to quash plaintiff's subpoena contending, in relevant part, that the receipt of its certificate of occupancy on March 23, 2023, established the "setback buffer" such that no other entities were permitted to establish marijuana retail facilities within 1,000 feet of its location. NAR Cannabis further asserted that the Wayne Circuit Court granted its separate motion for a preliminary injunction indicating "Planet Kush and other applicants, including Plaintiff, are precluded from operating an Adult Use Marijuana Retail Facility within 1,000 feet of the [] Property." The order granting NAR Cannabis's motion for a preliminary injunction provided, in pertinent part, that because NAR Cannabis "will suffer irreparable harm and loss if [the City] permits the opening of adult use marijuana retailers located within 1,000 feet of Plaintiff's facility located at 29899 Michigan Ave, Inkster, MI 48141":

> IT IS FURTHER ORDERED that Defendant CITY OF INKSTER is enjoined and restrained, whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendant, until further order of this court, from taking any action inconsistent with the terms of this Order.

> IT IS FURTHER ORDERED that no special land use approval of any regulated marijuana use shall be granted unless and until the applicants meet the requirements of the City of Inkster's Marijuana Zoning Ordinance including, but not limited to, an applicant's facility being greater than 1,000 feet from a lawfully existing marijuana provisioning center, recreational marijuana retailer establishment, or recreational marijuana microbusiness.

> IT IS FURTHER ORDERED that Defendant CITY OF INKSTER is enjoined and restrained from taking any actions in furtherance of the development of recreational marijuana retail, recreational microbusiness and/or medical marijuana provisioning center facilities, including, but not limited to, granting approvals, business licenses and/or certificates of occupancy that is inconsistent with City of lnkster Zoning Ordinance § 155.047 and § 155.1501.

On May 16, 2024, the trial court held a hearing regarding defendants' motion for summary disposition. Following the parties' arguments, the trial court opined:

> Right. So according to Defendant[s]' reply brief, NAR [Cannabis] . . . obtained a certificate of occupancy on March 23rd of 2023 and opened for business on June 9th of 2023. Under the city of Inkster's ordinances, this precludes any other marijuana business from opening within a thousand feet of NAR [Cannabis].

> Plaintiff does not dispute that there is the 1,000-foot buffer or that Plaintiff's business falls within that zone. Instead, Plaintiff claims that Defendant[s] did not follow their own procedures in considering Plaintiff's application for a marijuana facility license. Notably, Plaintiff's case does not challenge the ordinances, but asserts that Defendant[s] did not follow their own ordinance.

> Even if Defendant[s] did not follow the procedures to the letter, there is no remedy for Plaintiff. By the time the Plaintiff's application got to the city council for review in May of 2023, NAR [Cannabis] had already received a certificate of

-6-

occupancy prohibiting the acceptance of any other applications within a thousand feet.

* * *

> Next, Plaintiff asserts that the Defendant City Corp [sic] was required to act on Plaintiff's application and the failure to do so deprived Plaintiff of the ability to use the appeal process in the ordinances. Plaintiff also asserts that the clerk delayed the required background check request.

> As Defendant[s] note[], however, in [their] reply, the clerk is only required to act on the application once the other steps have been satisfied. And since Plaintiff did not get city council approval, the clerk was not required to act on the application. As for the delay in the background check request, this was a matter of a few weeks. At that point, Plaintiff had applied for the license, two other applicants were already well ahead of Plaintiff in the application process such that a delay of mere weeks was immaterial.

Regarding plaintiff's writ of mandamus, the court stated that "there is nothing ministerial that the City Clerk or any of the Defendants were supposed to do with regard to Plaintiff's application," and the City Council's denial of plaintiff's special land use application constituted a discretionary action. The trial court further explained, regarding plaintiff's superintending control claim, that Dixon's affidavit and the videorecordings of the City Council meetings indicated that defendants provided several reasons for the denial of plaintiff's special land use request, including the possibility of a zoning ordinance violation.

> The court additionally noted that there "was no arbitrary or capricious denial of due process," because the "delay in seeking the background check was minimal and did not meet the standards of abuse," and plaintiff did not substantially address its procedural due-process or injunction claims in its response. The trial court clarified the consequences of NAR Cannabis's suit on the present case stating:

> > So in the *Inkster Micro Business LLC versus City of Inkster* that Plaintiff obtained an injunction on August 9th of 2023, prohibiting the city from permitting adult use marijuana establishments within a thousand feet of . . . [NAR Cannabis]. The injunction basically requires the city should adhere to its own zoning regulations with regard to the thousand[-]foot buffer.

> > So at this point, the Court is gonna grant Defendant[s]' motion. There does not appear to be any need for discovery at this point. The existing operating marijuana facility precludes Plaintiff's business within a thousand feet. Moreover, Plaintiff was made aware of the other applicants in the same area, all on Michigan Avenue at the planning commission in April of 2023. The prior month, [NAR Cannabis] obtained its certificate of occupancy and even before the filing of the lawsuit [NAR Cannabis] had opened for business.

There is simply was no way Plaintiff could have met all of the requirements for obtaining a license before [NAR Cannabis] did and the Court therefore is granting Defendant[s]' motion.

On August 29, 2024, the court issued an order granting defendants' motion for summary disposition "for the reasons stated on the record." This appeal ensued.

## III. STANDARDS OF REVIEW

This Court reviews "de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). "A de-novo review means [this Court] review[s] the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). Summary disposition under MCR 2.116(C)(10) is proper when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A motion pursuant to MCR 2.116(C)(10) assesses the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare*, *Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*., quoting *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted).

"Issues involving mootness are questions of law that are reviewed de novo." *Equity Funding*, *Inc v Village of Milford*, 342 Mich App 342, 348; 994 NW2d 859 (2022). "[B]ecause mootness is jurisdictional in nature, it may be raised at any time and cannot be waived." *Id*. at 349 (quotation marks and citation omitted).

## IV. ANALYSIS

"Courts of this state derive their authority from Article VI of the Constitution of the state of Michigan of 1963." *In re Detmer/Beaudry*, 321 Mich App 49, 55; 910 NW2d 318 (2017). "An essential element of our courts' judicial authority is that the courts do not reach moot questions or declare rules of law that have no practical legal effect in a case." *Id*. at 55-56 (quotation marks and citation omitted). Stated alternatively, "This Court's duty is to consider and decide actual cases and controversies." *Adams v Parole Bd*, 340 Mich App 251, 259; 985 NW2d 881 (2022) (quotation marks and citation omitted). "An issue is moot when this Court's decision can have no practical effect on a controversy or it is impossible for this Court to fashion a remedy." *K2 Retail Constr Servs v West Lansing Retail Dev*, *LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367762); slip op at 12. "Whether a case is moot is a threshold question that we address before reaching the substantive issues of a case." *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018).

While this Court has not previously addressed whether the issuance of a marijuana business license to a competitor, in the context of a buffer mandate, renders an appeal moot, it is evident that further review of plaintiff's application would either necessarily result in denial or contravene the pertinent city ordinances.[5] The essence of plaintiff's claims is that, due to defendants' alleged improper administration of the license application process, particularly at the special land use stage, plaintiff was entitled to supplemental consideration of its marijuana license application and to the issuance of a decision in compliance with the relevant ordinances. However, once NAR Cannabis received its certificate of occupancy in March 2023—one of the final prerequisites to the approval of a marijuana business license—it effectively secured the buffer for that entity before plaintiff's application was presented to the planning commission or the City Council. Further, the purported delay of a few months in reviewing plaintiff's application would likely not have altered the outcome, given that both NAR Cannabis and Planet Kush were approximately a year ahead of plaintiff in the licensure process, and NAR Cannabis received its marijuana business license shortly after the denial of plaintiff's special land use request.

Additionally, plaintiff's grievance regarding the approval of Planet Kush's special land use application—despite its site being located within 1,000 feet of NAR Cannabis, while plaintiff's application was denied—was addressed by the preliminary injunction issued in NAR Cannabis's separation action, which barred defendants from taking any action with respect to *any* marijuana license applicant that was inconsistent with the pertinent ordinances. Notably, even if plaintiff's special land use application had been approved and the entity had proceeded through the licensure process, it is evident that it would likewise have been subject to the cited preliminary injunction, because plaintiff's site was located within 1,000 feet of NAR Cannabis; the injunction was issued in August 2023, shortly after plaintiff's application was presented to the City Council. In light of the explicit language of the zoning ordinance prohibiting the operation of multiple marijuana establishments within 1,000 feet of each other, and given that NAR Cannabis had already been granted a certificate of occupancy and established itself before plaintiff's suit, it is unclear what relief could be fashioned without disregarding the buffer mandate. See *Cary Investments*, *LLC v City of Mount Pleasant*, 342 Mich App 304, 321 n 5; 994 NW2d 802 (2022) (questioning "whether [the plaintiff] could be entitled to meaningful relief because it finished seventh in the competition for three licenses to operate as a recreational-marijuana dealer," and opining "that poor showing appears to divest [the plaintiff] of standing to contest the City's award of the three licenses to other

---

[5] This Court has previously examined whether summary disposition was proper concerning the plaintiffs' "substantially identical claims challenging the award of marijuana retail licenses to other applicants." *Exclusive Capital Partners*, *LLC v Royal Oak*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366247); slip op at 1-2. In *Exclusive Capital Partners*, *LLC*, this Court determined remanding the matter to the trial court "to address whether invalidation of the license awards is appropriate under MCL 15.270(2) and to provide the public body with the opportunity to remedy [the] violation" was warranted. *Id*. at ___; slip op at 25. However, this Court resolved that such relief was necessary because a violation of the Open Meetings Act (OMA), MCL 15.261 *et seq*., transpired regarding the selection of the marijuana business license applications, not because the city defendant issued special land use permits to certain applicants, despite the violation of the school-buffer mandate, and not the plaintiffs. *Id*. at __; slip op at 12-16.

applicants because [the plaintiff] would not be next in line even if all three of the licenses could not be used by the winning applicants . . .").

"There is, however, a well-recognized exception to the dismissal of a moot case." *Id*. "When a case presents an issue of public significance, and disputes involving the issue are likely to recur, yet evade judicial review, courts have held that it is appropriate to reach the merits of the issue even when the case is otherwise moot." *Id*. "An issue is likely to evade judicial review if the time frames of the case make it unlikely that appellate review can be obtained before the case reaches a final resolution." *In re Tchakarova*, 328 Mich App 172, 180; 936 NW2d 863 (2019).

Plaintiff contends, "City officials failing to comply with City ordinances or attempting to circumvent ordinances or amend them without going through the appropriate process is certainly an issue of public significance." Plaintiff further argues, "In this particular instance, Defendants/Appellees' behavior is likely to recur in the future and will continue [to] evade judicial review in similar circumstances where Defendants/Appellees' conduct was intended to make it extremely difficult, if not impossible, for an aggrieved party to obtain relief." Arguably, the improper or biased application of the ordinances governing marijuana establishments presents a matter of public interest, and an issue likely to recur yet evade judicial review, considering the buffer limitations imposed once a competitor has sufficiently progressed through the licensure process. However, we cannot conclude from the record that this is the present reality. Plaintiff applied for a marijuana business license with knowledge that its competitors were significantly further along in the licensure process, plaintiff participated in a hearing before the planning commission, and—despite plaintiff's assertions to the contrary—the City Council extensively reviewed plaintiff's special land use application, as reflected in Dixon's affidavit and the videorecording of the May 15, 2023 City Council meeting. See *Cary Investments*, *LLC*, 342 Mich App at 316 (noting neither the complaint nor the record before the trial court indicated "that the City acted in an arbitrary and capricious manner when it solicited applications for licenses, prescribed and applied a scoring system, conducted public meetings to consider the applications, and ultimately awarded licenses to the applicants with the three highest aggregate scores"). After the denial of its special land use application, a prerequisite to obtaining a marijuana business license, plaintiff was not entitled to further review of its broader application, notwithstanding its request for a writ of mandamus compelling the City Clerk to render a decision on that application.

Further, although plaintiff does not challenge the language of the pertinent ordinances, its underlying contentions appear to have been addressed by subsequent amendments thereto, specifically under Inkster Ordinances, § 124.03. Amended on April 17, 2023, pursuant to Resolution No. 04-23-058R, the ordinance added a provision titled, "Business License Process," which clarifies the order of consideration for marijuana business license applications and sets forth the applicable requirements, timelines, and governmental authority responsible for each stage of the licensure process. While plaintiff may have had a potentially viable argument concerning the "first-come, first-serve" nature of defendants' marijuana business licensing process, such claims were asserted only in connection with the alleged moratorium on marijuana business license applications imposed by defendants, and not with respect to the actual review process. See *Exclusive Capital Partners*, *LLC v Royal Oak*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366247) (noting that the MRTMA, specifically MCL 333.27959(4), "mandates that a municipality use a 'competitive process' to select among applicants if there are more applicants than available licenses"). Moreover, even though plaintiff contends that summary disposition was

-10-

granted prematurely because discovery had not yet been completed, plaintiff fails to explain what additional information, in light of NAR Cannabis's receipt of a certificate of occupancy and marijuana business license, could have altered the outcome of the underlying matter. For these reasons, we decline to consider the substantive issues of this case, and plaintiff's appeal is dismissed as moot.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi